[Crim. No. 3447.   Third Dist.   Oct. 7, 1963.]

THE   PEOPLE,   Plaintiff   and   Respondent,   v.   ERNIE ZAPATA, Defendant and Appellant.

S. Carter McMorris, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant Zapata was charged with possessing heroin, in violation of Health and Safety Code section 11500.[1] Convicted after a nonjury trial, he appeals. ■ Relying on *Robinson* v. *California,* 370 U.S. 660 [82 S. Ct. 141, 8 L.Ed 2d 758], he asserts that section 11500 is unconstitutionally applied here.

The *Robinson* case, decided in June 1962, held that imprisonment for narcotics addiction, viewed as an illness or status rather than an antisocial act, constitutes "cruel and unusual punishment" banned by the Eighth and Fourteenth Amendments to the federal Constitution. Zapata now suggests that the court has "an opportunity to extend or to limit the *Robinson* doctrine." His addiction to narcotics, he points out, is uncontroverted; his possession of heroin is a product or manifestation of his addiction or compulsive craving; the quantity was not large enough to indicate anything but possession for his own use and in satisfaction of his own craving; hence, by imprisoning him for possession, the state is indirectly punishing him for his addiction.

---

[1] Health and Safety Code section 11500 provides in part:

"Except as otherwise provided in this division, every person who possesses any narcotic other than marijuana except upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this State, shall be punished by imprisonment in the state prison for not less than two years nor more than 10 years, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than two years in prison."

Inherent in this contention is a distinction between an addict's possession in satisfaction of his compulsive craving and possession for other purposes. The latter, so goes the argument, may be constitutionally punished; the former may not.

In the spate of legal commentary which followed the *Robinson* decision, several writers have suggested that logic might invite expansion of its doctrine to embrace compulsive, addiction-induced activities, such as use, possession or purchase of narcotics.[2] Defendant, of course, accepts this invitation with alacrity. The invitation rests on an erroneous appraisal of the majority opinion in *Robinson*. That opinion, as we see it, does not turn on the volitional or nonvolitional character of the conduct which the state seeks to punish. Rather, it aims its thrust at the attempt to punish something which is not conduct, which is instead an affliction or status. To be sure, the compulsive craving which smothers freedom of the will is a frequent ingredient of the affliction or status. Nevertheless, the absence of volition is not the reason for invoking the constitutional ban.[3] The reason is the absence of any conduct at all, the application of punitive measures to a disease which, according to *Robinson*, is no more punishable than a common cold.

The *Robinson* case has been viewed in some quarters as a renunciation of traditional penology in its application to narcotics addiction and as a constitutionally inspired demand for treatment-oriented programs.[4] The choice between

---

[2]See, for example, Neibel, *Implications of Robinson* v. *California*, 1 Houston L.Rev. 1, 5-6; *The Supreme Court*, 1961 Term, 76 Harv.L.Rev. 54, 146; Notes: 51 Cal.L.Rev. 219, 225; 41 Texas L.Rev. 444, 446; *Recent Decisions*, 12 Buffalo L.Rev. 605, 620-621.

[3]We do not ourselves attempt to characterize addiction in terms of degrees of free will, ranging from volition to hopeless compulsion. That subject has been fully treated elsewhere. The municipal court which tried Robinson had delivered a jury instruction (quoted, 370 U.S. at p. 686, fn. 2 [8 L.Ed.2d at p. 774]) which defined addiction in terms of frequency of use, rather than compulsive use. The dissenting opinion of Mr. Justice White strongly points out that the majority "recognizes no degrees of addiction" (370 U.S. at p. 688 [8 L.Ed.2d at p. 775]).

[4]California law (Pen. Code, § 6400 et seq.) establishes an involuntary commitment program utilizing rehabilitation centers and closely supervised parole. (See *In re De La O*, 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793].) An alternative approach involves a combination of probation and nalline testing (Health & Saf. Code, § 11722). A third statutory procedure involves commitment and hospitalization in institutions of the State Department of Mental Hygiene (Welf. & Inst. Code,

medical and penal approaches must remain primarily in legislative hands. As Mr. Justice White implied in his *Robinson* dissent, legislatures are in a much better position than courts to adopt enlightened and progressive techniques to meet the narcotics evil. (370 U.S. at p. 689 [8 L.Ed.2d at p. 775].) The question before us is vastly more simple, a constitutional one: Does *Robinson* require us to hold that the state cannot constitutionally imprison for addiction-induced possession of heroin?

To answer this question we need only put together two pieces of dictum from the majority opinion in *Robinson*: "The broad power of a State to regulate the narcotic drugs traffic within its borders is not here in issue.... Such regulation, it can be assumed, could take a variety of valid forms. A State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics within its borders." (370 U.S. at p. 664 [8 L.Ed.2d at pp. 761-762].)

True, the quoted statements are only dicta. They demonstrate, nevertheless, that a constitutional ban on imprisonment for compulsive possession is not a hidden or necessary implication of the decision itself. We neither expand nor limit *Robinson*; we simply follow it. By imprisoning Zapata for possession, the state is penalizing his act, not his craving. Public policy considerations may call for a different approach. The constitutional ban on cruel and unusual punishment does not.

Closely allied to the constitutional contention is the claim that Zapata's addiction is "physical and mental insanity, rendering the defendant incapable of committing the offense alleged." The claim is bulwarked by the following passage from 22 Corpus Juris Secundum, Criminal Law, section 72, page 223: "...if mania or insanity, although caused by the use of a drug, is permanent and fixed in character, so as to destroy the knowledge of right and wrong as to the act, the person laboring under such infirmity will not be responsible, and the same principle applies where accused has become an addict unable to control his craving for the drug, in which case he will be regarded as insane and irresponsible

§§ 5350-5361). California law also recognizes mutual self-help institutions for treatment of addiction (Health & Saf. Code, § 11391). California's enlightened and comprehensive programs were recognized in the dissenting opinion of Mr. Justice Clark in the *Robinson* case (370 U.S. at p. 679 [8 L.Ed.2d at p. 770]).

when committing crime under the influence of the drug of which, being an addict, he is deemed to be an involuntary user, irrespective of whether his addiction resulted from a voluntary or other use of the drug in the first place."

We shall not attempt the large task of comparing the quoted statement with California principles of criminal responsibility. There are, to be sure, certain analogies between compulsive addiction and insanity. (See 51 Cal. L.Rev. at p. 227.) It is not clear just what kind of 'insanity" defendant is asserting. If it is insanity as defined by the M'Naughton rule, his claim must be rejected because he did not enter a plea of not guilty by reason of insanity and is conclusively presumed to have been sane, so far as sanity is tested by the ability to distinguish between right and wrong. (Pen. Code, § 1016; *People* v. *Wells,* 33 Cal.2d 330, 351 [202 P.2d 53].) There are other kinds of mental disorder which may render a person incapable of crime. (Pen. Code, § 26; *People* v. *Gorshen,* 51 Cal.2d 716, 727 [336 P.2d 492]; *People* v. *Baker,* 42 Cal.2d 550, 568-571 [268 P.2d 705]; *People* v. *Wells, supra,* 33 Cal.2d at pp. 336-357.) The evidence shows no such mental disorder. Zapata testified that he had been addicted to heroin for three years, that he had used heroin the night before his arrest, that he was "nervous and sick" and suffering from withdrawal symptoms at the time he made statements to the police. There was no evidence that he was under the influence of narcotics at the time of his arrest, that he was unconscious, or that he was not fully aware of his surroundings and his actions. Even on the assumption— which we make only for the purpose of this discussion—that the helpless condition of a compulsive addict might under some circumstances render the person incapable of crime, there is no evidence of such a condition here. For the one kind of insanity, there is no procedural foundation; for the "other" no evidentiary foundation.

█ Additional defense contentions necessitate summarization of the evidence. Sacramento police officers received information from an undisclosed source that a narcotics drop would be made at a Sacramento apartment house in which defendant and his wife were tenants. A wooden fence separated the apartment house property from the alley behind it. Behind the apartment house and inside the fence there was an area for garbage cans. Four officers began a surveillance of the area, stationing themselves in an apartment across the alley. About 11:45 a.m. a black sedan drove up the alley and stopped. The driver got out and went behind the fence to the

area where the garbage cans were located. He was out of the officers' sight momentarily, their vision being blocked by the fence. He quickly returned to his car and drove off rapidly, burning rubber.

A few moments later defendant and his wife came down the walk from the front of the apartment house to the garbage can area. The officers approached and identified themselves. Mrs. Zapata was a narcotics offender who was on probation. Two officers questioned Mr. and Mrs. Zapata concerning the automobile while the other two searched the garbage can area. One of the officers looked into the open pocket of Mrs. Zapata's housecoat. At that moment another officer observed defendant pull something from his pocket and drop it to the ground. The object was a blue plastic-wrapped packet. The officer picked it up. It contained a hypodermic needle, a syringe, an eye dropper and a brown powder later identified as heroin. The officers arrested both Zapatas and took them to the police station. At the time of his arrest defendant stated that he had found the packet in the garbage can and did not know why he had put it into his pocket. Later he admitted that the heroin and the other contents of the blue packet were for his own personal use. At the trial both Zapatas testified that the officers threatened to cause revocation of Mrs. Zapata's probation unless her husband ''copped out'' to a charge of possession. Zapata testified that these threats induced him to admit possession. The officers, however, testified that he made his statements voluntarily and without threat or inducement. Defendant testified that he was heavily addicted to narcotics, was using it daily and had been addicted for approximately three years. At his trial he denied knowledge or possession of the blue packet.

One contention on appeal is insufficiency of the evidence to support the finding of possession. The test on appeal, of course, is whether there was substantial evidence to support the conclusion of the fact trier. The transcript reveals evidence which is not only substantial but utterly convincing. Of particular interest to the trial judge must have been defendant's testimony denying possession, in its stark contrast with his statement to the arresting officers that he had picked up the packet in ignorance of its contents, his later testimony that he was using heroin daily and the officer's testimony that he had seen defendant drop the packet. The present contention is nothing short of frivolous.

Defendant urges that his confession was coerced by

threats to revoke his wife's probation. The evidence of coercion was in conflict. The officers' denial of threats furnishes substantial evidence to support the trial court's finding of voluntariness, and we will not disturb that finding. (*People v. Montano*, 184 Cal.App.2d 199, 210 [7 Cal.Rptr. 307].)

Citing *Gascon* v. *Superior Court*, 169 Cal.App.2d 356 [337 P.2d 201], defendant contends that the heroin packet was not admissible, being the product of an illegal search and seizure. Gascon had thrown away a package of marijuana after the officers threatened to conduct an illegal search of his person, illegal because there were no suspicious facts to constitute probable cause for an arrest and search. Under these circumstances the marijuana was illegally obtained evidence. (See also *People* v. *Macias,* 180 Cal.App.2d 193 [4 Cal.Rptr. 256].) The *Gascon* opinion itself points out a distinction which applies here: "If probable cause had existed for the petitioner's arrest it would be of no moment that they [the police officers] attempted a search of defendant's person before making the arrest rather than afterward." (169 Cal.App.2d at p. 358.)

In the present case there was probable cause to spare. Defense counsel did not demand the identity of the informer who had told the police of the coming narcotics "drop"; hence the anonymous character of the information is of no moment on appeal. (*Priestly* v. *Superior Court,* 50 Cal.2d 812, 819 [330 P.2d 39].) This information, plus the appearance of Zapata and his wife a few minutes after the black car drove off, plus Mrs. Zapata's known propensity for narcotics, justified the officers at least to the extent of looking into the open pocket of her housecoat. The result was defendant's furtive act of dropping the blue packet. Once it was in plain view, the search was over. (*Ker* v. *State of California,* 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726] ; *People* v. *West,* 144 Cal.App.2d 214, 219-220 [300 P.2d 729].) We find no illegality in defendant's arrest or in the officers' actions which culminated in the exposure of contraband.

Defendant was brought to his trial in jail denims. His counsel objected to trial under such circumstances. The trial judge stated: "Well, the Defendant is presumed to be innocent, and the fact that he appears in prison clothes is not going to have any effect on my decision in this case. You may proceed." Subjection to trial in prison garb is now claimed as denial of a fair trial and a deprivation of due process. We reject the constitutional claim, but we hold that the trial

court erred in requiring defendant to be tried in jail clothing.

The case was heard by the court sitting without a jury. (Cf. *People* v. *Garcia*, 124 Cal.App.2d 822 [269 P.2d 673]; *Collins* v. *State*, 70 Okla. Crim. 340 [106 P.2d 273].) The trial judge was justified in taking the position that he, as an experienced lawyer and judge, could hear and decide the case dispassionately without being influenced by the prisoner's garb. There are considerations here other than possible bias. These considerations were undoubtedly overlooked in the press of immediate decision. One is equality before the law. A defendant who can afford bail appears for trial in the best array he can muster. He may be a veritable satyr clad like Hyperion himself. Imposition of jail clothing on a defendant who cannot afford bail subjects him to inferior treatment. He suffers a disadvantage as a result of his poverty. Our traditions do not brook such disadvantage.[5] The second consideration is psychological. Some defendants may be callous; others confused and embarrassed by prison garb to the point where they may be handicapped in presenting or assisting their defense. Presumed to be innocent, the prisoner is entitled to as much dignity and respect as safety allows. As one court tersely put it: "The presumption of innocence requires the garb of innocence, ..." (*Eaddy* v. *People*, 115 Colo. 488 [174 P.2d 717, 718].)

We recognize that these considerations may not apply to appearances before a magistrate or to arraignments. They do apply to criminal trials.

Our examination of the record convinces us that the error did not cause a miscarriage of justice and does not require reversal.

Finally, defendant contends that he "was denied equal protection of the law by the court's refusal of hospital confinement for his addiction." Counsel's technique of clothing his assignments of error in constitutional disguise by prefacing them with a reference to due process or equal protection is hardly to be commended. This particular claim amounts only to an assertion that the trial court abused its statutory discretion in denying his request for adjournment of the criminal

---

[5]This particular defendant was apparently in custody at the time of his trial because he was serving an unrelated misdemeanor sentence in the county jail. The distinction between him and one who cannot make bail is not pertinent at this point.

proceedings and institution of proceedings for commitment to a rehabilitation facility. On the other hand, if this claim has constitutional pretensions, it is nothing more than a repetition of the attempt to get behind the shield of the *Robinson* case, an attempt which we have already rejected.

In this regard the court was governed by Penal Code section 6451, which permits the judge to proceed with the criminal action if "in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section."[6] When defendant's application was made, the trial judge ordered a probation report and fixed a later date for consideration of the application or for sentence. When defendant appeared on the deferred date, the trial judge stated that he had considered the probation officer's report, that "there is such a pattern of criminality set that I do not believe that he is a fit subject for commitment under section 6451; for that reason, the motion for commission [*sic*] under that section will be denied." The court also denied probation, then arraigned defendant for judgment and imposed sentence. The probation report revealed a long series of arrests, narcotics violations, county jail sentences

---

[6]The full text of section 6451 (prior to its 1963 amendment) was as follows:

"Upon conviction of a defendant for any crime in any superior court, if the judge ascertains that the defendant is addicted or by reason of repeated use of narcotics is in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and direct the sheriff to file a petition to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section. If a petition is ordered filed, proceedings shall be conducted in substantial compliance with sections 5353, 5053, 5054, and 5055 of the Welfare and Institutions Code.

"If, after a hearing and examination, the judge shall find that the person charged is a narcotic drug addict, or by reason of repeated use of narcotics is in imminent danger of becoming addicted to narcotics, he shall make an order committing such person to the custody of the Director of Corrections for confinement in the facility for a period of 10 years, except as this chapter permits earlier discharge. If, upon the hearing, the judge shall find that the defendant is not a narcotic addict and is not in imminent danger of becoming addicted to narcotics, he shall so certify and return the defendant to the department of the superior court which directed the filing of the petition for such further proceedings on the criminal charges as the judge of such department deems warranted."

and one state prison sentence imposed for the felony of escape from the county jail.

Narcotics rehabilitation facilities are essentially nonpenal. (*In re De La O,* 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793].) In section 6451 the Legislature expresses the concept that the treatment program conducted in these facilities may be impeded and impaired by patients of strong criminal tendencies. In the case of persons convicted of crime, the determination of fitness for the rehabilitation program is committed to the peculiar province of the trial judge. The statute invests him with a broad discretion which will not be disturbed on appeal in the absence of abuse. The probation report amply supported the judge's decision that defendant was not a fit subject for a rehabilitation facility, and there is no reason to disturb that decision.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied October 31, 1963, and appellant's petition for a hearing by the Supreme Court was denied December 4, 1963.