[Crim. No. 11875. Fourth Dist., Div. One. Nov. 19, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY ALLEN HETRICK, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Elaine A. Alexander, Chief Assistant State Public Defender, and Stephen J. Perrello, Jr., for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney Gen-

eral, Jay M. Bloom and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STANIFORTH, Acting P. J.**—Terry Allen Hetrick appeals his conviction (order granting probation) of a charge of assault with a deadly weapon (Pen. Code, § 245) arising out of a barroom brawl. Hetrick contends reversible error (1) regarding his motion for substitution of counsel and (2) because he was tried before a jury in jail garb. In our view the second contention has merit, requiring a retrial in civilian clothing.[1]

I

Motion for Substitution of Counsel

Although Hetrick tried unsuccessfully to inform the trial court of his dissatisfaction with his attorney before trial, for reasons not here relevant the motion to substitute counsel was not heard until the day set for trial. Responding to the motion, the trial court agreed to substitute a new attorney provided Hetrick would waive time and consent to a continuance so that the new attorney could prepare for trial. The court indicated a standard continuance for this purpose would be 55 days. Hetrick said he did not want to waive time nor agree to a continuance. The court asked, "Then you prefer to go to trial at this time?" to which he responded "I don't prefer to go to trial with Mr. Newton. But I don't have no choice, I guess." After ascertaining Mr. Newton was prepared for trial, the court ordered the trial to begin and it was tried without further objection to counsel. Defendant does not suggest counsel was not competent during the trial.

In the nature of things, Hetrick could not have what he asked, both an effective, prepared attorney and an immediate trial. The granting of

---

[1]Hetrick was sentenced on August 18, 1980, to three years' probation conditioned on local custody of one year, with credit for two hundred sixty-one days already served (including eighty-seven days' credit under Pen. Code, § 4019). He therefore had only 104 days to serve in jail and has long since been released on probation. These facts do not moot the appeal, since he remains on probation with suspended sentence for the offense, but it is regrettable the reversal of his conviction for constitutional error could not occur in time to prevent service of the jail time imposed.

a substitution conditioned on a continuance was approved in *People* v. *Mason* (1973) 34 Cal.App.3d 281, 289 [109 Cal.Rptr. 867]. The trial court acted within its discretion in imposing the condition, and, upon Hetrick's choice, electing to begin the trial with present counsel.

## II

### Trial in Jail Garb

■ The record shows on the first day of trial, July 15, 1981, at 1:45 p.m., after the motion for substitution of counsel had been argued and denied, Hetrick's attorney said to the court: "Your Honor, may we send him down to jail to get civilian clothing? He has a stencil across the back of his shirt." The court responded: "Do you have clothes down there that you would like to wear?" Hetrick replied: "I was extradited from Oregon. My clothes were wet when I was arrested in Oregon. They sat for three months, and they smell of mildew. This is all I have got." The court responded: "Very well. We will proceed with the trial at this time." A recess was taken, followed by an amendment of the information and another recess; and at 2:45 p.m. that same day, the jury panel was sworn and voir dire begun.

The Attorney General disingenuously argues, first, the record described above does not establish Hetrick was actually tried in jail garb. In response, Hetrick tenders an affidavit swearing he was in jail garb throughout the proceedings, but the Attorney General objects to the taking of original evidence on appeal. The record shows Hetrick was in jail garb at 1:45 p.m. and was observed by the jury panel at 2:45 p.m. that same day. After the above colloquy, the court did not grant leave to Hetrick to return to the jail to obtain civilian clothes. The record further shows the defendant was wearing a "blue shirt and Levis" during trial. Such record establishes the trial jury saw Hetrick in his jail clothing. We examine next the legal consequences flowing from these facts.

The state cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes. (*Estelle* v. *Williams* (1976) 425 U.S. 501, 512 [48 L.Ed.2d 126, 135, 96 S.Ct. 1691]; *People* v. *Williams* (1979) 93 Cal.App.3d 40, 66-67 [155 Cal.Rptr. 414].)

The specific constitutional evil is pointed out by the *Estelle* court in this language: "Courts have, with few exceptions, [fn. omitted] deter-

mined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system. [Citations.]" (*Op. cit. supra*, at p. 504 [48 L.Ed.2d at p. 130].)

The Court of Appeal in *People v. Zapata* (1963) 220 Cal.App.2d 903, 911 [34 Cal.Rptr. 171], was more explicit as to the reasons for the rule: "There are considerations here other than possible bias. . . . One is equality before the law. A defendant who can afford bail appears for trial in the best array he can muster. He may be a veritable satyr clad like Hyperion himself. Imposition of jail clothing on a defendant who cannot afford bail subjects him to inferior treatment. He suffers a disadvantage as a result of his poverty. Our traditions do not brook such disadvantage. [Fn. omitted.] The second consideration is psychological. Some defendants may be callous; others confused and embarrassed by prison garb to the point where they may be handicapped in presenting or assisting their defense. Presumed to be innocent, the prisoner is entitled to as much dignity and respect as safety allows. As one court tersely put it: 'The presumption of innocence requires the garb of innocence, . . .' (*Eaddy v. People*, 115 Colo. 488 . . . .)"

Next the Attorney General argues the right to be tried in civilian garb is waivable, and Hetrick waived it by not specifically requesting the court to furnish other clothing. The United States Supreme Court in *Estelle v. Williams, supra*, 425 U.S. 501, 508 [48 L.Ed.2d 126, 133], held: "Courts have therefore required an accused to object to being tried in jail garments, just as he must invoke or abandon other rights. The Fifth Circuit has held: 'A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error.' *Hernandez v. Beto*, 443 F.2d [634], at 637 [cert. den., 404 U.S. 897 (30 L.Ed. 2d 174, 92 S.Ct. 201)]. The essential meaning of the Court of Appeals' decision in *Hernandez* has been described by that court as follows: 'We held [in *Hernandez*] that the defendant and his attorney had the burden to make known that the defendant desired to be tried in civilian clothes before the state could be accountable for his being tried in jail clothes . . . .' *United States* ex rel. *Stahl v. Henderson*, 472 F.2d, at 557." (Fns. omitted.) And the Supreme Court noted: "Significantly, in the *Henderson* case the Fifth Circuit interpreted *Hernandez* as requiring the accused to take affirmative steps to apprise the trial court of his desire to be tried in civilian clothes. The *Hernandez* court had simply found,

under the circumstances presented there, that the defendant 'had met his burden.' [Citation.]" (*Id.*, at p. 509, fn. 4 [48 L.Ed.2d at p. 133].)[2]

The court explained the reason for the rule requiring an objection: "The reason for this rule is clear: if the defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have an opportunity to remedy the situation." (*Id.*, at p. 508, fn. 3 [48 L.Ed.2d at p. 133].) And this court in *People* v. *Du Bose* (1970) 10 Cal.App.3d 544, 549 [89 Cal.Rptr. 134], observed: "A defendant who is unable to provide himself with suitable clothing, and does not wish to be tried in jail attire may, no doubt, apply to the court for relief. (See *People* v. *Zapata*, 220 Cal.App.2d 903, 910-911 . . . .) Manifestly, if the application is to serve any useful purpose, it should have been made before the trial begins. If, in fact, appellant believed he would be prejudiced before the jury because of his jail clothing, he should have requested the court's aid before the jury had seen him dressed in it."

One further germane principle must be established. The United States Supreme Court looks with "*general disfavor*" on inferred waiver of constitutional rights. (*Estelle* v. *Williams, supra*, at p. 515 [48 L.Ed.2d at p. 137], conc. opn. of Powell, J.) The right should not be lost unless the people demonstrate "an intentional relinquishment or abandonment of a known right or privilege." (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]; *Barker* v. *Wingo* (1972) 407 U.S. 514, 525-529 [33 L.Ed.2d 101, 113-116, 92 S.Ct. 2182].)

Hetrick's counsel made a *specific* request for the defendant to be returned to the jail to obtain civilian garb. Certainly he "called the matter to the court's attention." Certainly he "requested the court's aid" and "apprised the court of his desire to be tried in civilian clothes." Hetrick meets every articulated standard for preserving his right to complain on appeal.

There is no showing Hetrick owned any other clothes or that he knew he was entitled to have civilian clothes supplied to him. In fact the oral

---

[2]Factually, trial counsel in *Hernandez did not* object to the jail clothing because, from past experience, he thought a motion for change of attire would have been treated as frivolous. The court held: "*We cannot accept this as a voluntary waiver by Hernandez.*" (*Hernandez* v. *Beto* (5th Cir. 1971) 443 F.2d 634, 637; italics added.)

exchange with the judge strongly suggests Hetrick had no idea of the extent of such rights. The above-quoted colloquy is no more a waiver than the act of a homeless pauper is a choice to sleep under a bridge. We find no waiver in these facts.

The United States Supreme Court has stated it is a violation of equal protection to compel a defendant who cannot make bail to be tried in jail garb; however, prejudice must be shown to obtain reversal on that ground. (*Estelle* v. *Williams, supra*, 425 U.S. 501, 507 [48 L.Ed.2d 126, 132]; see also *People* v. *Chacon* (1968) 69 Cal.2d 765, 778 [73 Cal.Rptr. 10, 447 P.2d 106]; *People* v. *Zapata, supra*, 220 Cal.App.2d 903, 911.) However, the possible denial of the fundamental right to a fair trial in such matters calls for close judicial scrutiny. (*People* v. *Williams* (1979) 93 Cal.App.3d 40, 67 [155 Cal.Rptr. 414] (exhibition of codefendants in jail garb).)

Here, the facts developed at trial show a fast moving restaurant altercation. The victim and his wife testified against Hetrick, claiming Hetrick assaulted the victim with a knife and threatened to kill the victim if the latter did not release a codefendant. The wife claims to have seen Hetrick threaten the victim with a knife. Hetrick, however, claims he picked up the codefendant's knife but made no gesture with it. Thus, witness credibility was crucial in this matter. Further, since three defendants were actually present and involved in the fight, there is the possibility of false identification.

Our final concern is the test to be used in assessing prejudice: "The quantum of error cannot be measured in terms of tipping the scales of justice. 'Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of . . . [the prison garb worn by the defendant] on the minds of an average jury.' *Harrington* v. *California*, 1969, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728 . . . . Before 'a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' *Chapman* v. *California*, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828 . . .; *cf. United States* v. *Manning*, 5 Cir. 1971, 440 F.2d 1105; *Simpson* v. *Wainwright*, 5 Cir. 1971, 439 F.2d 948.)" (*Hernandez* v. *Beto, supra*, at p. 637.)

We conclude permitting the jury to see Hetrick in jail clothes must have been prejudicial under these circumstances, not harmless beyond a reasonable doubt.

Order reversed.

Wiener, J., concurred.

**FROEHLICH, J.***—I respectfully dissent.

The teaching of *Estelle* v. *Williams* (1976) 425 U.S. 501 [48 L.Ed.2d 126, 96 S.Ct. 1691], reflected in *People* v. *Hernandez* (1979) 100 Cal.App.3d 637 [160 Cal.Rptr. 607], and *People* v. *Williams* (1979) 93 Cal.App.3d 40 [155 Cal.Rptr. 414], is that it is inconsistent with the Fourteenth Amendment to compel an accused to stand trial in jail clothing. A violation of this proscription, however, is not automatically reversible error. The rule is grounded upon the presumption the finder of fact will be influenced adversely by viewing the defendant throughout the trial in garb which constantly suggests his need for incarceration. Where the particular circumstances of the case indicate such prejudice did not result from use of the jail clothing, no error, or at best only harmless error, is found.

For instance, where the alleged crime being tried occurred in prison, the jury will necessarily be advised of the confined status of the defendant, and the sight of him in jail clothing is not deemed prejudicial. (*Estelle* v. *Williams, supra*, 425 U.S. 501, 507 [48 L.Ed.2d 126, 132].) Admonishment by the trial judge or voir dire by defense counsel on the subject of possible prejudice resulting from prison clothes may remove or insure against any such prejudice. (*People* v. *Hernandez, supra*, 100 Cal.App.3d 637, 646; *People* v. *Chacon* (1968) 69 Cal.2d 765, 778 [73 Cal.Rptr. 10, 447 P.2d 106].) Where the trial is before a judge sitting without a jury who declares the prison clothing will have no effect on his decision, the presumed prejudice disappears. (*People* v. *Zapata* (1963) 220 Cal.App.2d 903, 911 [34 Cal.Rptr. 171].)

Further, it is well established that the right to civilian clothing during trial may be waived by failure to make timely objection. (*Estelle* v. *Williams, supra*, at pp. 512-513 [48 L.Ed.2d at pp. 135, 136]; *People* v. *Hernandez, supra*, at p. 646.) Very good reasons exist for requiring counsel affirmatively to object to the clothing his client wears before its use may be deemed error. As stated by Chief Justice Burger in *Estelle* (at pp. 512-513): "Under our adversary system, once a defendant has

---

*Assigned by the Chairperson of the Judicial Council.

the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

"Accordingly, although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."

While prison clothing in one setting may be substantially prejudicial to a defendant, in other situations the effect of the prison clothing may be minor or nil—and other considerations may weigh more heavily on trial counsel. In some situations it may even be deemed advantageous to go to trial in jail clothes. (See *Estelle* v. *Williams, supra*, at p. 508 [48 L.Ed.2d at p. 133].) There is very good cause, therefore, for requiring defense counsel to make a clear and affirmative objection to proceeding without a change of clothing. His failure to make such objection is most reasonably presumed, in the absence of evidence or circumstances suggesting the contrary, to be an acknowledgement the jail clothing issue is unimportant.

This case would seem to be a good example of such reasoning. First, we have practically no evidence of the actual clothing worn by the defendant. His lawyer remarked before commencement of the trial, "He has a stencil across the back of his shirt." We are not advised by the record as to whether he continued to wear this shirt throughout the proceedings. The only other reference to his clothing is contained in the testimony of an identifying witness who testified he was wearing a "blue shirt and Levis." Contrary to the inference made by the majority, this description would seem to fit civilian attire as well as county-issue clothing. While some have speculated that a defendant on bail might appear as a "veritable satyr clad like Hyperion himself" (*People* v. *Zapata, supra*, 220 Cal.App.2d 903, 911), it requires no scientific survey to demonstrate those participating as defendants in criminal cases in today's courtrooms are often seen in the most casual of attire. In sum, we really do not know what the defendant wore throughout the trial, and we have no way of knowing just how prejudicial it was, if at all.

Further, from the skimpy record before us, we can infer at minimum that providing the defendant with civilian clothing would have been a problem administratively. The defendant's own clothing was not usable and nothing discloses the difficulties or delays which might have been encountered in acquiring suitable dress for him—whether by the efforts of defense counsel, the judge, or perhaps the offices of some charitable organization. We do know the principal concern of the defendant when the case was called was his lack of confidence in his counsel. The colloquy between the defendant and the judge on this subject embraces 6 pages of the trial transcript, or some 160 lines. The defendant ultimately relents and accepts his assigned counsel because "I can't waive time, because I am ready . . . ." The subsequent reference to clothing (as quoted in the majority opinion) occupies a mere 12 lines of transcript. It clearly was not a matter of much concern to anyone, and it is a fair inference the defendant would not have wanted his trial delayed in order to search for suitable civilian clothing.

The majority finds an "objection" of counsel in this brief reference to jail clothing—and thereupon identifies error in the trial judge's administration of the case warranting reversal. I cannot subscribe to this conclusion. Everything in the record of the case indicates the defendant received a full and fair trial. While he had some question about his counsel's ability at the commencement of the trial, no contention of error or incompetence of any kind is proffered after the trial. Of the innumerable factors potentially influencing finders of fact at a trial, the defendant's clothing is only one. Conceivably, it can be a factor of substantial weight—it also may be immaterial. Those participating in the trial itself are in the best position—to diagnose the setting of the case and to weigh the importance of the ingredients of the scene. If clothing is a weighty factor, it is incumbent upon counsel to raise the issue. A failure to object to the defendant's clothing is most reasonably interpreted as a stipulation that it is not an important factor.

We are all aware of the tremendous and increasing difficulties encountered by trial court judges in achieving just and efficient management of criminal calendars. Every increase in procedural minutia imposed upon the trial court judge results in a lengthening of the particular hearing and trial, cumulating in delays and backlogs. The resulting court congestion is then itself a source of potential injustice to the accused awaiting trial. We do the system no benefit when we encrust it with automatic inquiries and *sua sponte* actions required of criminal trial court judges. The majority opinion elevates a mere inquiry about

clothing to the status of a formal trial objection. I have no doubt this will come as a surprise to many criminal court judges who believed the defendant's attire was a matter primarily for defense counsel's concern. This opinion foists upon the trial judge yet one more area of inquiry requiring him to interpose his own notions of trial tactics upon the defendant and his counsel.

I must respectfully dissent from the trend, and specifically from the application of that trend in this case.

Respondent's petition for a hearing by the Supreme Court was denied January 13, 1982.