[No. B031599. Second Dist., Div. Three. May 23, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM ALFRED JACOBS, Defendant and Appellant.

**COUNSEL**

Christopher T. Armen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Edward T. Fogel, Assistant Attorney General, Keith H. Borjon and Karen Bissonnette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DANIELSON, J.**—William Alfred Jacobs (defendant) appeals from a judgment of conviction following a jury trial at which he was found guilty of attempting to sell heroin (Pen. Code, § 664; Health & Saf. Code, § 11352), a necessarily lesser included offense of selling heroin, the offense charged in the one count information.

We affirm the judgment.

FACTUAL STATEMENT

At trial the prosecution presented the following evidence:

On July 20, 1987, Leonardo Hernandez (Hernandez), a confidential informant for the City of Long Beach, met defendant near 127 West 14th Street, Long Beach, as part of a controlled drug buy. In response to Hernandez's request to buy a quarter gram of heroin for $40, defendant said he would have to telephone his connection.

During the first phone call defendant asked if the connection could come to the area where defendant was to drop off the heroin. The other party, who sounded like a male Mexican, said he could not do so at that time and asked defendant and Hernandez to go to 19th Street and Long Beach Boulevard and call again.

After the two arrived at that location, defendant yelled across the street to a white male who then crossed over and spoke with defendant. Hernandez did not pay attention to the conversation.

Defendant then made a second phone call during which he said he was at that location and had the money.

About 10 minutes later, defendant made a third phone call in order to see what the delay was. The other party said the car had just arrived and would be there momentarily.

Within minutes of the last phone call, a car pulled up by the curb where defendant and Hernandez stood. Hernandez placed his hand with the money inside the car. The woman passenger told the male driver in Spanish that all $40 was there. The driver took the money and handed Hernandez a bindle, which contained .30 grams of heroin.

In his defense defendant gave the following testimony: He denied he sold heroin but admitted he had agreed to make a phone call to try to acquire some for Hernandez, who claimed to be in withdrawal. Defendant further admitted to making the three phone calls. He denied, however, that the exchange of money for heroin was the result of such calls.

During the first phone call defendant made, Hernandez grabbed the phone. When he hung up, Hernandez told defendant they should go to

either 19th or 20th Streets and Long Beach Boulevard. He did not tell defendant he had made a deal.

Upon arriving at 19th Street and Long Beach Boulevard defendant made a second call and said he wanted to forget the deal, because there might be a robbery attempt, that something was wrong. The other party on the phone said okay, that no deal had been made.

After a few minutes, defendant made a third phone call to a neighbor friend, Tashi Zoowana (Zoowana), asking for a ride. Zoowana arrived, parked across the street, and approached defendant. When defendant said he would leave as soon as he could get away from Hernandez, Zoowana returned to his car.

Defendant denied having ever seen the man or woman in the car which drove up to the curb where he and Hernandez were standing.

After the jury returned its guilty verdict, defendant moved for a new trial. In his declaration in support of the motion defense counsel made the following statements: On October 19, 1987, defendant, while in handcuffs, was taken down the hallway past prospective jurors into the public entry of the courtroom. "Because it was apparent that most, if not all, prospective jurors . . . had observed the defendant to be in custody, [defense counsel] was forced to voir dire at length on the point." During trial, on October 20 and 21, defendant complained of the above practice of transporting him to the courtroom. Defense counsel did not move to change the practice, because he "was unaware of any possible alternate procedure. . . ." Also, "[r]ather than move for a mistrial [he] thought it in [defendant's] best interests to see what verdict the jury would return, because [he] was greatly pleased with the jury composition when jury selection was completed." The motion for a new trial was denied.

## ISSUES PRESENTED

Defendant asserts three grounds for reversal of the judgment: (1) he was denied a fair trial, because the trial court failed to instruct the jury sua sponte that the physical restraints on defendant had no bearing on the determination of guilt; (2) defense counsel's failure to object timely to the appearance of defendant in restraints amounted to incompetency of counsel; and (3) the prosecutor's comments on defendant's failure to call a witness constituted misconduct.

DISCUSSION

## I. *Instruction Regarding Defendant's Restraints*

■■■ Defendant asserts that absent a showing of necessity, a defendant cannot be subject to physical restraints in the courtroom in the jury's presence. (*People* v. *Prado* (1977) 67 Cal.App.3d 267, 275 [136 Cal.Rptr. 521]; see also, *People* v. *Hetrick* (1981) 125 Cal.App.3d 849, 852-853 [178 Cal.Rptr. 303].) ■■■ Moreover, when such restraints are imposed in the courtroom, the trial court must, sua sponte, instruct the jury that such restraints have no bearing on the determination of guilt. (*People* v. *Jenkins* (1987) 196 Cal.App.3d 394, 402 [241 Cal.Rptr. 827].)

He claims that such instruction was necessary in this instance because on October 19, 1987, defendant was handcuffed when he was brought through the courthouse hallway where "most, if not all" prospective jurors were, and that on October 20 and 21, 1987, during trial, defendant was again brought handcuffed through that hallway where jurors might have seen him.

■■■ We have no quarrel with defendant's recitation of law. (See also, *People* v. *Duran* (1976) 16 Cal.3d 282, 291-292 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1].) On the other hand, we find the recited principles to be inapplicable to this case. The record is devoid of any evidence that defendant was in restraints in the courtroom itself during trial and in the jury's presence. Defendant in essence acknowledges this to be so.

In *People* v. *Duran, supra,* 16 Cal.3d 282, 290-291, the court reaffirmed the general rule that a defendant cannot be physically restrained in the courtroom while in the presence of the jury absent a showing of manifest need for such restraints. The *Duran* court reasoned: "it is manifest that the shackling of a criminal defendant will prejudice him in the minds of jurors. When a defendant is charged with any crime, and particularly if he is accused of a violent crime, his appearance before the jury in shackles is likely to lead the jurors to infer that he is a violent person disposed to commit crimes of the type alleged." (*Id.* at p. 290.) ■■■ It was in this context that the *Duran* court held: "In those instances when visible restraints must be imposed the court shall instruct the jury *sua sponte* that such restraints should have no bearing on the determination of the defendant's guilt. However, when the restraints are concealed from the jury's view, this instruction should not be given unless requested by defendant since it might invite initial attention to the restraints and thus create prejudice which would otherwise be avoided." (*Id.* at pp. 291-292, fn. omitted, italics in original.) From the foregoing it is clear that the rationale behind the *sua*

*sponte* instruction requirement imposed by the *Duran* court is to alleviate the potential prejudice arising from the need to have visible, physical restraints on a defendant in the courtroom while in the jury's presence.

On the other hand, our Supreme Court has not held that it is incumbent on the trial court to instruct the jury sua sponte that the appearance of a defendant in physical restraints has no bearing on the determination of guilt in the situation where prospective jurors or jurors may have viewed, or have viewed, defendant in physical restraints merely while he is being taken to or from the courtroom.

From our review of the applicable law we find no legal foundation nor necessity for such a rule. The customary practice of utilizing physical restraints while transporting a prisoner from place to place, e.g., from jail to courtroom and back, is a matter of common knowledge and generally acknowledged as acceptable for the protection of both the public and defendant. It has, in fact, been established that it is legally permissible to transport a prisoner to the courtroom in physical restraints. (See, e.g., *People* v. *Duran, supra,* 16 Cal.3d 282, 289; *People* v. *Hillery* (1967) 65 Cal.2d 795, 806 [56 Cal.Rptr. 280, 423 P.2d 208].) Moreover, our Supreme Court has noted that it has been generally recognized that brief observations of a defendant in physical restraints by one or more jurors or veniremen either inside or outside the courtroom do not constitute prejudicial error. (*People* v. *Duran, supra,* 16 Cal.3d at p. 287, fn. 2; see also, *People* v. *Rich* (1988) 45 Cal.3d 1036, 1083-1085 [248 Cal.Rptr. 510, 755 P.2d 960].)

 Accordingly, we hold that where one or more jurors or veniremen merely witnessed defendant being transported to or from the courtroom in visible restraints the trial court has no duty, sua sponte, to instruct the jury that the physical restraints on defendant have no bearing on the determination of guilt.

On the other hand, if the defense had requested such an instruction, the trial court would be required to instruct the jury that the physical restraints on defendant have no bearing on the determination of guilt.

 As a general rule, a trial court is not required to instruct the jury not to be persuaded by feelings of passion or prejudice against a defendant since it is presumed that jurors are fair and intelligent persons, and thus need no special instruction on the obvious, basic principles of just conduct. (See, e.g., *People* v. *Womble* (1945) 67 Cal.App.2d 885, 890 [155 P.2d 838]; *People* v. *Scott* (1914) 24 Cal.App. 440, 449 [141 P. 945].) Nonetheless, if such an instruction is requested by the defense, the trial court should so

instruct the jury. (See, e.g., *People* v. *Arechiga* (1945) 72 Cal.App.2d 238, 241 [164 P.2d 503].)

■ As noted by our Supreme Court in *People* v. *Duran, supra,* 16 Cal.3d 282, brief observations by jurors or veniremen of a defendant in physical restraints, being transported to or from the courtroom, do not ordinarily raise the specter of prejudice against such defendant. Nonetheless, there may be occasions where such observations are not brief or are accompanied by other factors, e.g., comments suggesting bias.

■ Mindful of the constitutional right of every accused to trial by a fair and impartial jury (U.S. Const., Amend. VI; Cal. Const., art. I, § 16), we therefore further hold that upon a showing that one or more jurors or veniremen observed defendant in physical restraints being transported to or from the courtroom, and upon request by the defense, the trial court must instruct the jury that the physical restraints on defendant have no bearing on the determination of guilt. (See *People* v. *Cecil* (1982) 127 Cal.App.3d 769, 778 [179 Cal.Rptr. 736] (a timely request for admonition would have cured any prejudice flowing from any observation of defendant in holding cell by jurors as they passed by on their way to deliberate); *People* v. *Jenkins, supra,* 196 Cal.App.3d 394, 402 (a request by the defense for an instruction that increased courtroom security has no bearing on the determination of guilt may be appropriate, albeit the court had no sua sponte duty to give such an instruction); cf. *United States* v. *Halliburton* (9th Cir. 1989) 870 F.2d 557, 560.)

The failure of the court so to instruct the jury, however, would constitute reversible error only if it were "reasonably probable that a result more favorable to [defendant] would have been reached in the absence of such error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also, *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 872 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845].)

From our review of the record we find no requirement for such an instruction here. The omission by defense counsel to request such an instruction was clearly the result of a tactical choice. Defense counsel conducted extensive voir dire of the prospective jurors on the issue of the impact on the jurors of viewing defendant in handcuffs. Although defense counsel opined that the jurors would be impacted by that sight, he elected not to move for a mistrial, because he thought it was in defendant's best interests to see what the jury's verdict would be since defense counsel was "greatly pleased with the jury composition when jury selection was completed."

## II. *Effectiveness of Counsel*

■ Defendant contends that defense counsel was ineffective, apparently because of his failure to object to the defendant being "brought into court [through] the public entrance in handcuffs, which meant that he was in handcuffs in full view of the jurors in the hallway or the area near the courtroom door." He points out that he had complained to defense counsel about that practice during both days of trial, and that he was embarrassed by the practice.

■ In order to establish inadequacy of counsel the "[defendant] must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates" (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]) and either that (1) the "counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense" (*ibid.*) or that "it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. [Citations.]" (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144].) Incompetency of counsel is not shown where there could have been a "rational tactical purpose" for counsel's acts or omissions. (*Id.* at p. 581.) The reviewing court will not second guess the tactical choices of trial counsel. (*People* v. *Whittington* (1977) 74 Cal.App.3d 806, 819 [141 Cal.Rptr. 742].)

■ We agree that defense counsel's failure to object timely to the use of physical restraints precludes review of that issue on appeal. (See, e.g., *People* v. *Thompkins* (1987) 195 Cal.App.3d 244, 254 [240 Cal.Rptr. 516].) However, we reject defendant's claim of ineffective assistance of counsel as unsupported by the record. The record includes a declaration of defense counsel stating that he was not aware of any possible alternative procedure for transporting defendant and that he "had voir dired" on the subject. It further reflects that his decision to move for a new trial following the verdict instead of moving for a mistrial on the issue of the jury's viewing of defendant in handcuffs was a tactical choice, because he was "greatly pleased" with the jury composition. Accordingly, we find that defense counsel's omission to object to the physical restraints on defendant was likewise a matter of tactical choice.

## III. *Prosecutor's Conduct*

■ Defendant's remaining claim of error concerns certain comments by the prosecutor in closing argument. In his argument defense counsel asserted that defendant's testimony was true by arguing that the fact that Hernandez testified that a man did cross the street to talk with defendant was

corroboration of defendant's testimony that his third phone call was to Zoowana and to ask for a ride.

In a mistaken belief that defense counsel was asserting that Zoowana's crossing of the street corroborated defendant's testimony the prosecutor argued, in sum: "the only way you can call that corroboration is if you call that friend to the witness stand and had him testify to that; and that wasn't done in this case."

Defense counsel objected. The trial court denied defense counsel's request that the jury be admonished not to speculate why a witness was not called.

The prosecutor then continued by again arguing that there was no corroboration, because of the failure of the witness to testify. He further argued that such failure also led one to deduce "either [defendant], just recently made up that person . . . or that person doesn't exist; because if you were defending [defendant], if I were defending him, I would call that witness; and I know you would, too."

Defense counsel objected on the ground that he did not know which witness the prosecutor was referring to. The court overruled the objection.

Prosecutorial misconduct implies the use of deceptive or reprehensible methods to win over the jury or court. (See, e.g., *People v. Haskett* (1982) 30 Cal.3d 841, 866 [180 Cal.Rptr. 640, 640 P.2d 776].) We find that here there was misunderstanding, but no misconduct. The prosecutor's above comments were based on the erroneous assumption that defense counsel was asserting that the conduct of Zoowana, instead of Hernandez's testimony, was the corroboration of defendant's testimony.

In any event, it is clear from the record that such prosecutorial comments, even if they were misconduct, would not require reversal since in the absence of such comments a result more favorable to defendant would not be reasonably probable. (*People v. Haskett, supra,* 30 Cal.3d 841, 866; *People v. Milner* (1988) 45 Cal.3d 227, 245 [246 Cal.Rptr. 713, 753 P.2d 669]; *People v. Bolton* (1979) 23 Cal.3d 208, 214 [152 Cal.Rptr. 141, 589 P.2d 396].)

## DECISION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.