[Crim. No. 34467. Second Dist., Div. Five. Oct. 9, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL C. WILSON, Defendant and Appellant.

COUNSEL

Harold Greenberg for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—Defendant was convicted of (count I) rape, a violation of Penal Code section 261, subdivision (3); (count II) sodomy, a violation of Penal Code section 286, subdivision (c), and (count III) oral copulation, a violation of Penal Code section 288a, subdivision (c) after trial by jury.

Since the contentions on appeal are:

1. "The trial judge's refusal to release the defendant on bail and compelling the defendant to appear in prisoner's garb, after the issuance of the Writ of Habeas Corpus, constituted prejudicial misconduct."

2. "The Prosecutor's conduct of giving an Allen charge to the jury in his closing argument prevented the defendant from obtaining a fair trial, and properly formulated verdict."

It is unnecessary to set forth a statement of fact. Suffice it to say, there is sufficient evidence to support the verdicts. The defense admitted the acts but claimed they were consented to for the payment of money; that when the acts were finished and no immediate payment was made, the victim made the charges. Defendant's good character was testified to by witnesses produced by him.

### Re Exoneration of Bail and Remand to Custody

On Thursday, September 21, 1978, after most of the People's case was in, a People's motion was made and granted exonerating bail and remanding defendant to custody. The next morning before continuation of trial and out of the presence of the jury, defendant objected to the granting of the motion on the previous day. The People argued the applicability of Penal Code section 1129.[1]

Defendant asked for a continuance to seek appellate relief and a record was made of the fact that defendant was wearing "prison sandals." Also, a continuation was requested because the defense needed time to contact seven witnesses. The continuance was granted until Monday, September 25th, at 1:30 p.m. on the second ground only. The bailiff at the court's direction, instructed the counsel for defendant as to the sheriff's clothing rules.[2]

Defendant sought a writ that same day. The writ ordering defendant released on bail was returned September 26th and filed with the superior court on September 27th.

During the time interval, September 22d-27th, excluding the week-end, trial was resumed as ordered at 1:40 p.m. on Monday, September 25th. The record does not show how the defendant was dressed that afternoon. The following morning, September 26th, out of the jury's

---

[1]Penal Code section 1129 reads:

"When a defendant who has given bail appears for trial, the court may, in its discretion, at any time after his appearance for trial, order him to be committed to the custody of the proper officer of the county, to abide the judgment or further order of the court, and he must be committed and held in custody accordingly."

[2]"I have stated to counsel, to defense counsel that clothing exchanges are made up until 5:00 in the evening. Either himself or any member of the defendant's family can take clothes down to the jail and have them turned in. That way he can change his clothes in the morning and have fresh clothes when he appears in court.

"His shoes were taken away from him because the heels were over two inches high, which causes a security problem in the jail. They can also take shoes down there for him and turn them in and he will have shoes to wear on Monday."

presence, it was noted that defendant was in jail clothing which was considered inappropriate. The court criticized the sheriff's department for letting that happen and the trial was trailed to 1:30 p.m. to have proper clothing provided. Defendant was not observed by the jury while inappropriately garbed. On trial continuation and thereafter, defendant was dressed in civilian clothes. Bail was actually posted but defendant not released from custody at the time of trial continuance on September 28th. The fact that defendant was in the same clothing (assumed the same as worn on the 27th) and unshaven on the morning of the 28th, was noted in the record before the jury was brought into the courtroom. A motion for mistrial was made and after considerable discussion the trial was continued until 2 p.m., the defendant released from custody, and the motion denied.

To the merits of the contention before us, there was no error creating an unfair trial. The trial judge was deemed wrong in exonerating bail. This was ultimately corrected and no prejudice is shown from custody itself. ■ This leaves the allegations about appearance in jail clothing being prejudicial. There was no prejudice because the record does not show that defendant was in the presence of the jury in jail attire.[3] Also, there is no suggestion that defendant was other than at his sartorial best on the afternoon of September 28th when he commenced his testimony. As for his alleged tiredness, the sole note of this fact, if it was a fact, came gratuitously from defendant's mouth and the jury was properly directed to disregard it. They were also instructed not to be biased because defendant had been arrested and charged. Again, in sum, no prejudice has been shown.

■ As to the contended prejudice from what defendant refers to as the prosecutor's Allen charge, the deputy district attorney in his opening argument made the following comment:

"Ladies and gentlemen, I thank you very much. I know it has been a long trial and there has been a lot of delay, but they have been unavoidable. I certainly appreciate any effort that you have spent so far, but I appreciate and am thanking you in advance for the effort that I know you will take inside there, and the very last thing I am going to say

---

[3]Any reasonably experienced criminal attorney would have been aware of the clothing requirements and seen that his client was suitably dressed. We note that the record does not establish whether counsel arranged for civilian clothes for the day the record shows he appeared in jail attire.

to this jury is make a decision. There is no reason in the world to ever suspect that we could get 12 more impartial people than what is sitting—

"THE COURT: Improper argument, Counsel.

"MR. CORRADO [deputy district attorney]: There is no reason that I can see why this jury should not make a decision in this matter."

The record reflects no objection by defendant nor request for an admonition by the trial court. Hence, defendant cannot now raise the issue on appeal. (*People* v. *Vernon* (1979) 89 Cal.App.3d 853, 860 [152 Cal.Rptr. 765].)

Even had objection been raised, no error was committed requiring reversal. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) This was not a jury instruction.

Furthermore, the prosecutor's statement contained no reference to minority jurors condemned in *People* v. *Gainer* (1977) 19 Cal.3d 835, 847-851 [139 Cal.Rptr. 861, 566 P.2d 997]), no reference to the fact that the case must at sometime be decided (*id.*, at pp. 851-852), and no reference to a retrial if the jury were deadlocked (*id.*, at p. 852.) Rather, he was only able to say that there was no reason to believe that there could be 12 more impartial persons than the 12 in the jury box. He was then properly stopped by the trial court before error could occur.[4]

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 6, 1979.

---

[1]Of course, the giving of the so-called Allen instruction to a deadlocked jury was disapproved in *People* v. *Gainer, supra.*