Filed 8/20/20 P. v. Perez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B299287 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F-11425) (San Luis Obispo County) |
| v. | |
| ANDREW REY PEREZ, | |
| Defendant and Appellant. | |

A jury found Andrew Rey Perez guilty of possession for sale of heroin (Health & Saf. Code, § 11351) and possession for sale of alprazolam (Xanax) (Health & Saf. Code, § 11378). The trial court suspended imposition of sentence, and placed Perez on three years' formal probation. We affirm.

FACTS

Perez had been involved in a dispute with Michael Daniloff. Perez accused Daniloff of pistol-whipping him and taking $1,800. Thereafter, shots were fired at Daniloff's house.

The day after the shooting, Daniloff's aunt, Diana Ballesteros, went to Perez's house to ask him to stop shooting

into Daniloff's house.  During the meeting, Perez became angry and complained that Ballesteros did not have Perez's gun, a subject that Ballesteros knew nothing about.  Perez slammed a bag of heroin on the table and said, "Here . . . Where's my piece?"  Ballesteros did not know what he was talking about.  Perez pointed an assault rifle at Ballesteros's head.  She left Perez's house and called the police.  The police arrested Perez that night.

The next day, the police executed a search warrant on Perez's mother's house.  Perez had been living there since Thanksgiving.  His mother rented a room to a tenant, whom she had not seen since December 6.  The police were searching for the assault rifle and evidence of narcotic sales.

Detective Steve Boyett of the Paso Robles Police Department conducted the search.  In the laundry room, he found a black plastic tote.  Inside the tote he found 52.27 grams of heroin, two functioning digital scales with heroin residue on them, several unused baggies, a spoon with heroin on it, a tablet computer, and some male clothing.  The laundry room was accessible to everyone in the house.  Heroin is often sold in 0.1 gram doses, so the 52.27 grams would make 522 individual sales.  Boyett also found 100 whole and 13 partial Xanax pills inside the tote.  The pills were green, rectangular, and had "S903" printed on them.  He did not find a prescription.

When Perez was arrested, the police searched him before transporting him to the police station.  They searched him again at the station.  When they transported him to the jail, the correctional staff searched him again.  Perez was placed in a holding cell at the jail.

The jail had eight holding cells.  Only one arrestee occupied a cell.  There were surveillance cameras in the area.  Deputy

2

Nataly Beltran was working as a corrections officer in the holding cell area.

A surveillance video of Perez using the toilet in the holding cell was shown to the jury. Beltran testified there is a partition in front of the toilet that blocks a view of the person's private parts. All that is visible is the person's hands and legs.

Perez pulled down his pants and sat on the toilet. His hands were constantly in and out of his pants. He threw something on the floor, and then looked around. Beltran said Perez was "on the toilet for a while."

After Perez was removed, Beltran conducted a search of the cell. She found next to the toilet near the back wall of the cell a plastic baggie containing greenish-blue bar-shaped pills with "S903" imprinted on them. Laboratory tests showed the pills were Xanax. Beltran also found in front of the toilet a black felt bag covered with toilet paper. The bag was empty.

DEFENSE

Perez elected to stand on the People's evidence.

DISCUSSION

I.

*Surveillance Video*

Perez contends the trial court erred in admitting the surveillance video showing an uncharged crime.

*(a) Relevance*

Perez argues the surveillance video was irrelevant. Evidence is relevant if it has any tendency in reason to prove a disputed fact that is of consequence to the determination of the action. (Evid. Code, § 210.) Evidence Code, section 1101, subdivision (b) allows evidence of an uncharged crime when

3

relevant to prove some fact other than the defendant's disposition to commit such an act.

Here the prosecution had the burden of proving that Perez possessed the drugs found in his mother's house. The drugs were found in a laundry room accessible to all members of the household, including a tenant. The video showed Perez on the toilet, searching through his pants and dropping something on the floor. After Perez left the cell, a deputy found beside the toilet a plastic baggie containing the same type of pill found in his mother's house. The evidence had a tendency in reason to prove Perez possessed the drugs found in his mother's house.

Perez points out that in its closing argument, the prosecution conceded other inmates used the holding cell and that there is a possibility that the pills were dropped by another inmate. But that goes to the weight of the evidence, not its admissibility. (See *People v. Wharton* (1991) 53 Cal.3d 522, 597 [existence of contrary inferences goes to weight of evidence, not admissibility].)

*(b) Evidence Code section 352*

Evidence Code section 352 gives the trial court the discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will require an undue consumption of time or create substantial danger of undue prejudice, confusing the issues, or of misleading the jury.

Perez objected that the probative value of the video evidence is substantially outweighed by the danger of undue prejudice.

Undue prejudice refers not to evidence that proves guilt, but to evidence that prompts an emotional reaction against the

4

defendant and tends to cause the trier of fact to decide the case on an improper basis. (*People v. Walker* (2006) 139 Cal.App.4th 782, 806.) All evidence that tends to prove guilt is prejudicial to the defendant's case; the stronger the evidence, the more prejudicial. (*Ibid.*)

Here, the video shows Perez discarding something in the area of the toilet where a baggie was found containing pills similar to those found in his mother's house. That is highly probative evidence that Perez possessed the pills found in his mother's house.

Perez argues the video of him using the toilet is humiliating. But only his hands and feet are visible. Moreover, simply using the toilet is not by itself prejudicial. It is something everybody does. What is prejudicial is that the video shows Perez dropping something in the area where the pills were found. It is prejudicial in that it tends to prove his guilt. But it is not unduly prejudicial. It does not tend to cause the jury to decide the case on an improper basis.

Perez also claims that the video was prejudicial because it deprived him of the benefit of wearing nice clothes at trial. But Perez forfeited the objection by failing to raise it at trial. (*People v. Taylor* (1982) 31 Cal.3d 488, 495.) Moreover, he was wearing his own clothes in the video, not jail garb.

Perez also argues that the evidence is cumulative and resulted in an undue consumption of time. Perez fails to point out where in the record he raised such objections at trial. In any event, the argument has no merit.

Perez's argument that the video evidence is cumulative is based on the premise that the evidence was admitted to show Perez possessed the pills in his mother's house *for sale*. But it

5

was admitted to show Perez, and not someone else in his mother's house, possessed the pills. The evidence was not cumulative.

Nor did the evidence require an undue consumption of time. The prosecution had the burden of proving possession. The video and related evidence were an essential part of the prosecution's case. It did not unduly consume time.

*(c) Limiting instruction*

Perez argues the trial court had a sua sponte duty to give a limiting instruction on the use of the evidence. Ordinarily the court has no sua sponte duty to instruct on the admissibility or use of other crimes evidence. (*People v. Cottone* (2013) 57 Cal.4th 269, 293.) Perez cites *People v. Collie* (1981) 30 Cal.3d 43, 64 for the proposition that the trial court has a sua sponte duty to give such a limiting instruction in the extraordinary case where the evidence is both highly prejudicial and minimally relevant to any legitimate purpose. Here the evidence was highly prejudicial in that it tends to prove guilt, but for the same reason it is not minimally relevant to any legitimate purpose.

## II.

### *Refusal to Declare a Mistrial*

Perez contends the trial court erred in refusing to grant a mistrial based on the prosecutor's violation of *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*).

### *Background*

On direct examination, Detective Steve Boyett testified that he advised Perez of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). Then Boyett invited Perez to make a statement. The prosecutor asked Boyett, "In response to your invitation to get Mr. Perez to give a statement, what, if anything, did he say?" Boyett replied, "I believe he told

6

me he didn't want to speak to me without a lawyer." Boyett said he terminated his efforts to get information from Perez.

The trial court immediately called a recess. Defense counsel asked for a mistrial. He stated that a jury instruction would not cure the error. The prosecutor stated that he asked the question because Detective Boyett testified at the preliminary hearing that Perez made a statement after he was advised of his *Miranda* rights. The prosecutor did not expect Boyett would testify any differently at trial.

The trial court stated that it read the preliminary hearing transcript, and that a reasonable person might not have anticipated the response Boyett gave at trial. The court found that the prosecutor did not intentionally elicit evidence of Perez's refusal to talk. The court denied Perez's motion for a mistrial. It concluded a curative instruction would suffice. At Perez's request, the court delayed a curative instruction to the end of trial.

*Discussion*

In *Doyle*, the Supreme Court held that it violates due process for a prosecutor to impeach a defendant with his silence after the defendant had been advised of his right to remain silent. (*Doyle v. Ohio*, *supra*, 426 U.S. at p. 619.) There are two essential components of a *Doyle* violation: (1) the prosecution must make use of a defendant's post-arrest silence for impeachment purposes, either by questioning or in closing argument, and (2) the trial court permits that use. (*People v. Evans* (1994) 25 Cal.App.4th 358, 368.)

Here, neither component of a *Doyle* violation is present. The prosecutor did not use Perez's silence for impeachment purposes, either by questioning or by comment in closing

7

argument.  Nor did the trial court permit that use.  It called an immediate recess and gave a curative instruction.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>



GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.