Filed 8/29/22 P. v. Hernandez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>KEVIN JUAN HERNANDEZ,<br><br>  Defendant and Appellant. | F081225<br><br>(Super. Ct. No. BF172182A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Detjen, J. and Franson, J.

Defendant Kevin Juan Hernandez was found guilty of several sex offenses against a minor, Jane Doe, when she was between eight and 12 years of age. He was sentenced to an aggregate term of 55 years to life plus 12 years. On appeal, defendant contends that (1) the trial court abused its discretion in denying defendant's motion requiring Jane Doe be referred to as the "alleged victim" rather than the "victim," and (2) the abstract of judgment contains clerical errors that must be corrected. The People disagree as to the first issue but agree that the abstract of judgment contains clerical errors. We affirm the judgment and order the trial court to issue an amended abstract of judgment correcting the clerical errors.

## PROCEDURAL SUMMARY

On September 25, 2019, the Kern County District Attorney filed an amended information, charging defendant with sexual intercourse with a child 10 years old or younger (Pen. Code, § 288.7, subd. (a);[1] count 1), oral copulation of a child 10 years old or younger (§ 288.7, subd. (b); count 2), sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b); count 3), and continuous sexual abuse of a child (§ 288.5, subd. (a); count 4).

On September 26, 2019, the jury found defendant guilty on all counts.

On May 20, 2020, the trial court sentenced defendant to an aggregate term of 55 years to life plus 12 years as follows: on count 1, 25 years to life (the statutorily mandated sentence; § 288.7, subd. (a)); on counts 2 and 3, 15 years to life (the statutorily mandated sentence; § 288.7, subd. (b)), to be served consecutively; and on count 4, 12 years (the middle term), to be served consecutively.

On June 1, 2020, defendant filed a notice of appeal.

---

[1]     All statutory references are to the Penal Code.

2.

# FACTUAL SUMMARY[2]

Defendant first had sexual contact with Jane Doe when she was approximately five or six years of age, and he was approximately 15 years of age. Defendant initiated the sexual contact "[w]henever he had the chance." The sexual contact continued until Jane Doe was approximately 12 years of age and defendant was approximately 22 years of age. Defendant made her touch her mouth to his penis. That occurred multiple times, most recently when she was eight or nine years of age. Defendant put his fingers in Jane Doe's vagina more than 10 times. Defendant put his penis in Jane Doe's vagina more than 40 times.

# DISCUSSION

## I. Referring to Jane Doe as the "Victim"

Defendant argues, as he did below, that referring to Jane Doe as the "victim" "undermined the presumption of innocence guaranteed by the due process clause." The People disagree. We agree with the People.

### A. Background

Before trial, defendant moved the trial court for an order requiring that Jane Doe be referred to as the "alleged victim" rather than the "victim." Referring to Jane Doe as the "victim," defendant argued, necessarily suggested that a crime occurred and "violate[d] the presumption of innocence." The prosecutor opposed defendant's motion.

The trial court denied defendant's motion, explaining that the "term 'victim' is so ingrained or used in determining how to instruct the jury, [in] how to differentiate between the person committing the crime and the victim of the crime, that taking the word out would be very difficult and possibly confusing in determining …" how to instruct the jury.

---

**2** Much of the testimony offered at trial is irrelevant to the issues on appeal. For the sake of brevity and to protect Jane Doe's privacy, our factual summary is limited.

During jury voir dire, the trial court referred to a hypothetical victim to a potential juror who reported they had been through training for mandated reporters for those required to report sexual or physical abuse, as follows:

> "Okay. Let's just say that in this case a victim takes the stand and explains to her what has happened to her. [¶] … [¶] Are you going to take your training and say, hey, wait a minute, now I learned if that ever happens, that's an indication of abuse and automatically believe what she's saying, or are you going to take all the facts from the trial in and make a decision?"

Later during the jury voir dire, while asking questions of a potential juror, the trial court again referred to a hypothetical person who might refer to themself as a victim:

> "So if you sat on this as a juror in this case and listened to the evidence, you feel that if you were to hear from somebody that expressed that they were a victim of sexual assault you would feel sad for them and side with them?"

Toward the end of jury voir dire, in addressing the full potential jury, the trial court referred to the charges against defendant and used the term "victim":

> "All right. [Defendant] is charged with the following crimes: That he did willfully engage in sexual intercourse with a child who is ten years old or younger, to wit, Jane Doe, …; did willfully engage in oral copulation with a child who's ten years old or younger, Jane Doe, same victim; Count 3, did willfully engage in sexual penetration of a child who was ten years old or younger, Jane Doe; and Count 4, on or about and between January 11, 2011, and January 10, 2013, was a person who resided with or had reoccurring access to a child under the age of 14, Jane Doe, the same individual, who, over a period of not less than three months, engaged in three or more acts of substantial sexual conduct.

> "Defendant has pled not guilty to these charges and asked for a trial by jury, so here we are.

> "Does anybody feel they cannot be fair to both sides simply hearing the charges?"

Very shortly after, the trial court emphasized the presumption of innocence to the jury:

4.

"You all understand that the fact that [defendant] has been charged with committing a crime is not evidence of his guilt. He's only been charged and no evidence has been presented to you yet. [¶] Would you all agree with that? [¶] … [¶] [Juror], if I handed you the verdict form right now and asked you fill it, your only two options at this point in the trial right now are guilty or not guilty, how would you fill it out, having heard no evidence, guilty or not guilty? [¶] … [¶] If you've heard no evidence, at this point he's only been charged, and I force you to make a decision, it'd have to be not guilty because you haven't heard any evidence. [¶] Everybody agree with that?"

Defendant has identified, and we have found, no other instance in which the trial court referred to a "victim" or referred to Jane Doe as the "victim" in the presence of the jury.

During jury voir dire, the prosecutor referred to calling a hypothetical victim at trial in the context of evaluating witness testimony:

"So if there was someone who was up there testifying and you believed because of their body language and different factors that they were lying, you wouldn't accept that what they're telling or saying to be the truth without looking at the critical issue?

"Like if a victim were to get up and lie and you really thought, oh, this is not—not true. You understand that there are people who can do that.

"You would agree?"

During her opening statement, the prosecutor referred to Jane Doe as "the victim": "You're going to hear, most importantly, from [Jane Doe]. She's the victim about who[m] we have been speaking … [during] voir dir[e]." The prosecutor further referred to Jane Doe as the "victim" twice in questioning one of the detectives who interviewed Jane Doe and asking the detective general questions about standard procedures in interviewing a victim, preparing a victim for a pretext call, and collecting DNA from a victim. The detective referred to Jane Doe as the "victim" or by her first name and repeatedly noted the police department's normal procedures and common occurrences with regard to a victim.

5.

**B. Analysis**

Defendant relies on *People v. Williams* (1860) 17 Cal.142 for the proposition that the trial court referring to the complaining witness or a decedent as the "victim" at trial violates the presumption of innocence because it improperly implies the guilt of the defendant. (*Williams*, at p. 147; see *People v. Taylor* (1982) 31 Cal.3d 488, 494 [requiring a defendant to wear jail clothing "tends to undercut the presumption of innocence by creating an unacceptable risk that the jury will impermissibly consider this factor"].) In *Williams*, the trial court in a murder trial where the defendant claimed self-defense read the jury an instruction which referred to the decedent as defendant's "victim." (*Williams*, at p. 146.) Specifically, the instruction read, in relevant part, "the fact, if you so find, that the defendant was seeking to enforce the collection of taxes against another [person], or even against his victim, [did not] give the defendant any right to take his life." (*Ibid.*) That instruction, our high court concluded, was "calculated … to create prejudice against the accused. It seem[ed] to assume that the deceased was wrongfully killed, when the very issue was as to the character of the killing." (*Id.* at p. 147.) When the decedent or complaining witness "is referred to as 'a victim,' the impression is naturally created that some unlawful power or dominion had been exerted over his person. … The [c]ourt should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression." (*Ibid.*)

First, as to the trial court's use of the term "victim," the trial court referred to Jane Doe as the "victim" only once and in the context of reading the charges. The court noted that the offense charged in count 1 was against the "same victim" as charged in count 2. Immediately thereafter, the trial court asked the jury if they could be fair to both sides, explained the presumption of innocence, gave an anecdote about the presumption of innocence, and confirmed that the jury agreed with the presumption of innocence. The trial court did not instruct the jury that Jane Doe was a victim or otherwise imply that defendant was guilty of any offense. Quite the opposite, the trial court advised the jury

6.

that since it had heard no evidence, it was required to find defendant not guilty of any offense at that time. The trial court's reference to Jane Doe as the "victim" was not error and *Williams* does not compel a contrary result.

The trial court's two other uses of the term "victim" in jury voir dire were not references to Jane Doe as a victim and did not suggest that defendant was guilty of any offense. The first reference to a victim being called to testify in this case was used by the court to illustrate that a juror should not always accept a witness's testimony and to confirm that the potential juror's experience in outside training—specifically, mandated reporter training—would not result in the juror "automatically believ[ing]" the testimony. That use of the term "victim" did not imply that defendant was guilty of any crime. The trial court's other use of the term "victim" in voir dire was to inquire whether a potential juror would feel bad for and side with someone who "expressed that they were a victim of sexual assault …." Again, the trial court did not state that Jane Doe was a victim. It used the term "victim" to confirm that a juror would not believe a witness merely because they identified themself as a victim. The trial court's use of the term "victim" was not error.

Next, defendant argues that the prosecutor's use of the term "victim" in referring to Jane Doe improperly implied that defendant was guilty and compounded the trial court's purported error.[3] The People emphasize that the trial court's use of the term "victim" to describe the complaining witness is meaningfully different than a prosecutor's use of the term to describe the complaining witness. They correctly note that our Supreme Court drew that distinction in *People v. Wolfe* (1954) 42 Cal.2d 663. In *Wolfe*, the prosecutor in a murder case asked the defendant, " '[What] happened to your

---

[3]    In his reply, defendant asserts that his "point is not that the prosecutor's and the detective's characterizations of [Jane Doe] as a victim were errors in and of themselves, but rather that they echoed and reinforced … that the court improperly labeled" her a victim.

knife?' " (*Id*. at p. 666.) The defendant responded, " 'It was left in the *victim's* back.' " (*Ibid*.) The prosecutor then asked, " 'Did you leave it in the victim's back?' " (*Ibid*.) On appeal, the defendant in *Wolfe* relied upon *Williams* for the proposition that the prosecutor's question was misconduct because it assumed the defendant's guilt. (*Wolfe*, at p. 666.) Our Supreme Court explained that *Williams* was "not [o]n point" because the term "victim" was used by the prosecutor, not the judge, "and the jury was instructed that it was the sole judge of the value and effect of the evidence; that it could not convict a defendant upon mere suspicion; that the prosecution was 'bound to establish the guilt of a defendant beyond a reasonable doubt, and unless the prosecution [did] so, … it [was the jury's] duty to find the defendant not guilty.' " (*Wolfe*, at p. 666.)

The prosecutor and a detective testifying in the People's case repeatedly referred to Jane Doe as the "victim." Defendant acknowledges in his brief he "at some point had molested" Jane Doe, but he argues that the question was defendant's age at the time of the offense since section 288.7 specified that the offense was committed only if the defendant was 18 years of age or older at the time of commission of the offense.[4] Defendant contends that there was no "victim"—because no crime was committed—if defendant was not an adult at the time of the offenses. No authority is cited for that proposition. Regardless, defendant has pointed us to no authority, and our own research has revealed none, to convince us that it is error for a prosecutor to refer to the complaining witness as the "victim." The prosecutor is an advocate. In this case, it was the prosecutor's theory that Jane Doe was the victim of sexual abuse by defendant, as it related to this criminal action, when she was between eight[5] and 12 years of age and when defendant was between 18 and 22 years of age. In that context, referring to Jane

---

[4] Section 288.5, on the other hand, does not require that a defendant be 18 years of age or older at the time of commission of the offense.

[5] The record included testimony that defendant's sexual abuse of Jane Doe began when she was five or six years of age and did not cease until she was 12 years of age.

8.

Doe as the "victim" was not error. Because we conclude that the trial court did not err, the prosecutor's and detective's use of the term "victim" to refer to Jane Doe did not compound any error by the trial court.[6]

## II. Clerical Errors in the Abstract of Judgment

The abstract of judgment contains several clerical errors. Appellate courts have the inherent power to correct clerical errors in the abstract of judgment. (*People v. Jones* (2012) 54 Cal.4th 1, 89.) We order the following errors corrected.

The parties agree, as do we, that the abstract of judgment incorrectly characterizes counts 1 through 3. While the abstract accurately reflects the statutes violated, it incorrectly reflects the jury's verdicts. The abstract reflects that defendant committed the following crimes: on count 1, "sexual intercourse or sodomy with [a] child 10 yea[rs of age or younger]"; and on counts 2 and 3, "oral copulation or sexual penetration of a chi[ld 10 years of age or younger.]" (Capitalization modified.) The abstract should reflect the defendant committed the following crimes: on count 1, sexual intercourse with a child 10 years of age or younger; on count 2, oral copulation of a child 10 years of age or younger; and on count 3, sexual penetration of a child 10 years of age or younger.

---

[6] Because we conclude that use of the term "victim" resulted in no error, we are not required to reach the People's harmlessness argument. That said, even assuming there was error, it would be harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24 [beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836–837 [reasonably probable].) We are convinced beyond a reasonable doubt the prosecutor's and detective's use of the term "victim" did not affect the jury's verdicts. Jane Doe testified essentially that defendant sexually abused her at every opportunity from the time she was five or six years of age to 12 years of age. Moreover, the jury was instructed that it would decide what the facts were based on the evidence presented at trial, defendant was presumed to be innocent, that the People were required to prove defendant guilty beyond a reasonable doubt, that nothing the attorneys said (including questions) was evidence, and that the jury alone must decide the credibility and believability of witnesses. In light of Jane Doe's testimony and the jury instructions, the scattered references to Jane Doe as a "victim" were harmless.

The parties further agree, as do we, that the abstract of judgment incorrectly reflects the years of the offenses. Counts 1 through 3 were committed between 2009 and 2011, and count 4 was committed between 2011 and 2013, as reflected in the amended information and found true in the jury's verdicts.

## **DISPOSITION**

The judgment is affirmed. The trial court is ordered to issue an amended abstract of judgment correcting the errors identified in section II of this opinion and forward copies to the appropriate entities.