Filed 9/23/13  P. v. Sam CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>NANG SAM,<br><br>　　　　Defendant and Appellant. | C069687<br><br>(Super. Ct. No. CRF11620) |

　　　　This case involves sexual abuse by defendant Nang Sam of his younger sister (the victim).  Defendant was entrusted with caring for her and his other younger siblings because their mother was largely absent.  Defendant violated that trust for years by sexually abusing the victim, culminating in his prosecution and guilty verdict of 36 counts of lewd acts and sexual penetration.  The court sentenced him to a determinate term of 10 years in prison plus an indeterminate term of 40 years to life.

　　　　On appeal, defendant raises four contentions dealing with (1) juror excusal, (2) sufficiency of evidence, (3) instructional error resulting in ex post facto violations, and (4) shackling.  Finding merit only in defendant's contention of instructional error resulting in ex post facto violations (which the People concede), we reverse defendant's

1

convictions for two counts of sexual penetration. (This reversal has no practical effect on defendant's sentence, because the trial court sentenced defendant to concurrent sentences on those counts, which were counts 23 and 24.)

FACTUAL AND PROCEDURAL BACKGROUND

The victim, who was born in May 1996, is the youngest of seven siblings, who as relevant here included defendant, Ny, Chun, and Danny. Defendant is the oldest, born in February 1984. Their mother was "never home," so defendant was entrusted with caring for the other children. Below is an abbreviated recitation of the facts, which will be recounted in greater detail in the discussions of sufficiency of evidence (part II) and instructional error (part III).

Defendant started sexually abusing the victim when she was about six or seven years old, after the entire family had moved to a home on Casselman Drive (the first Casselman home) on May 1, 2003. Her other brothers had gone out and she wanted to go with them, but defendant made her stay home with him. Defendant touched her "private areas." During other times, defendant would use the ruse of hide and seek to capture the victim and touch her private parts. The touchings progressed to penetration of the victim's vagina and anus with defendant's penis and fingers. These touchings and penetrations continued when the family moved four houses down to another house on Casselman Drive (the second Casselman house) on July 1, 2005.

The last time defendant touched the victim was when he came into the room she shared with her brother Chun. As defendant "was touching [her]," he noticed there was "blood so he went out [of] the room . . . ." The victim had started menstruating when she was 12.

In November 2010, the victim reported the molests to Sophy Dong, who was the fiancé of the victim's brother Ny.

2

In early December 2010, Dong texted defendant, stating (without elaborating) that what he had done to the victim was very "sick and wrong." Defendant responded that he thought of killing himself every day, he never wanted "that" to happen, and what he did was "very sinful."

In mid-December 2010, Dong drove the victim to the police department to report the molests.

In January 2011, the victim was interviewed at the Multi Disciplinary Interview Center for a couple hours by a police officer. (We will refer to this person later as the interviewer.)

In February 2011, defendant voluntarily participated in a police interview where he admitted to Detective Eric Angle some of the sexual conduct with the victim.

At trial, defendant did not testify and his defense in closing argument was that the victim's story "d[id]n't wash" because somebody would have witnessed the molests and there was no evidence defendant "penetrated [the victim] in any fashion."

## DISCUSSION

### I

### *The Court Was Within Its Discretion*

### *To Deny Defendant's Request To Excuse Juror No. 8*

Defendant contends the trial court erred in failing to excuse Juror No. 8. He argues the juror committed misconduct because she intentionally concealed that she had been a child molest victim; the trial court erred in failing to apply the presumption of prejudice that arises when such misconduct comes to light; and the judgment must be reversed because the People cannot rebut the presumption of prejudice that arises from the misconduct.

As we explain, defendant has forfeited the issue of whether Juror No. 8 intentionally concealed the information, and the trial court acted within its discretion in concluding she was not biased.

3

## A

### *Facts Behind Defendant's Request To Remove Juror No. 8*

Each prospective juror filled out a questionnaire that asked about qualifications to sit on this case. Question 27 asked the following: "Everyone has some biases, prejudices or preconceived ideas. Do you believe you have any which would interfere with your ability to fairly decide this case?" Juror No. 8 checked "yes" and in the lines asking, "If yes, please explain," Juror No. 8 wrote, "I have known an individual who (as a minor) was abuse[d] by a sibling, a potential bias." Question 43 asked, "Have you, a family member, or a friend, ever been a witness to a sexual assault or sexual misconduct . . . .?" Defendant checked "yes." In the lines asking, "If yes, please explain," Juror No. 8 wrote, "would prefer not to explain." In the lines asking, "What action did you take, if any, as a result of what you witnessed or what you were told," Juror No. 8 wrote, "no action." On the day of jury selection, August 2, 2011, nobody questioned Juror No. 8 about her responses. Defense counsel did not object to her for cause, either, and she was seated as a juror.

On August 2, 2011, Juror No. 8 submitted the following note to the court: "In my question[nai]re I had filled out that I had personal reasons for which I believe I would be biased in this case. These reasons are of a very personal nature and I had hoped I would not have to discuss them. As a youth I had been molested by a family member. This was not something I had ever discussed with anyone and would prefer not to discuss it further. I am not sure I would be biased in either side but this case would bring me much emotional trauma, considering my situation. I would please ask you to dismiss me f[rom] this trial. I have worked many years to cope with my situation, please understand."

First thing on August 3, 2011, the court questioned Juror No. 8 with both sides present. The court asked, "Are the views you expressed in the letter you sent me yesterday still your views today?" Juror No. 8 responded, "Yes, I think I could be non-biased, but I do think that it would be more emotionally draining than -- I understand

that's not really a good reason, but that still stands." She continued, "Like I said, I mean, I really do think that I could be non-biased. I just wanted to let it be known to both of the attorneys and to yourself the situation and it will just be difficult emotionally."

The juror then left the courtroom and the court told the attorneys the following: "It's my belief that [Juror No. 8] will do everything she can to abide by her oath, and for that reason, I do not find good cause at this point to excuse her . . . ." Defense counsel then stated, "Just to recite my position in chambers was that she should be replaced by an alternate given the letter which appears to state that she cannot be unbiased and she cannot be fair." The prosecutor responded, "That is not what the letter states." The court concluded, "She said she could be unbiased, but that it was going to be very emotional. The letter speaks for itself."

B

*Defendant Has Forfeited His Argument That Juror No. 8 Intentionally Concealed Facts;*
*The Trial Court Was Within Its Discretion To Conclude Juror No. 8 Was Not Biased*

Defendant's contention of error begins with an argument that Juror No. 8 committed misconduct in violation of his right to trial by an unbiased, impartial jury by "intentionally conceal[ing] the fact that she herself was a molest victim." Defendant has forfeited this argument by failing to raise it in the trial court. (*People v. Esquibel* (2008) 166 Cal.App.4th 539, 556 [the failure to object in the trial court, even to errors of constitutional dimension, may lead to forfeiture of the claim on appeal].) In the trial court, defendant argued the court should discharge Juror No. 8 "given the letter which appears to state that she cannot be unbiased and she cannot be fair." Intentional concealment and bias are two separate issues for the trial court, each of which when raised the appellate court analyzes separately. (See *People v. McPeters* (1992) 2 Cal.4th 1148, 1175 [noting the two issues as separate and then analyzing whether a juror's nondisclosure was inadvertent and then analyzing under an abuse of discretion standard whether the juror was biased].) By failing to raise the issue of whether the nondisclosure

5

was intentional, defendant deprived the trial court of the opportunity to assess the issue of whether the concealment was intentional, which was critical, because a trial judge "is in the best position to assess the state of mind of a juror or potential juror on voir dire examination." (*Ibid*.)

As to the issue defendant did raise in the trial court, i.e., that Juror No. 8 was biased because she could not be fair, the court was well within its discretion to conclude otherwise. (*People v. McPeters*, *supra*, 2 Cal.4th 1148, 1175 [standard of review].) On the juror questionnaire, she was advised to base her decision on only the evidence presented in court. When asked if she could do that, she answered "yes." The same questionnaire also advised her to follow the law as the judge explained it, whether or not she agreed with it. When asked if she could do that, she again answered "yes." After she was selected as a juror, but before presentation of the evidence, she submitted the letter to the court about her prior molestation. (*Id*. at p. 1175 [juror's candid disclosure before the trial began supported the trial court's determination that the juror could be fair and impartial].) Finally, when questioned by the court about her letter, she twice stated she thought she could be "non-biased." On this record, the court was within its discretion to conclude Juror No. 8 was not biased and therefore could remain on the jury.

II

*Sufficient Evidence Supported The Verdicts*

Defendant contends there was insufficient evidence of counts 2 and 3, 5 through 12, and 14 through 36 because the People failed to "prove[] the time-specific crimes with which it chose to charge [him]." He claims that the evidence failed to establish that an offense occurred during any of the time frames alleged in the information.

We begin with a brief overview of how the case was charged and a few basic propositions and then turn to the specific evidence offered to support the at-issue counts. The People's theory of the case as stated in closing argument was "[s]ix counts a year for six years is what the defendant is charged with." Consistent with this argument, the

6

information alleged 36 counts, starting on May 1, 2003, each with a two-month time period (i.e., count 1 occurred "[o]n or about and between May 1, 2003 and July 6, 2003," count 2 occurred "[o]n or about and between July 7, 2003 and September 6, 2003," etc.).

"[G]eneric testimony" regarding child molestation "is sufficiently substantial from an evidentiary standpoint." (*People v. Jones* (1990) 51 Cal.3d 294, 313-314.) The victim must be able to describe (1) the kind of act or acts committed with sufficient specificity to assure unlawful conduct has occurred and to differentiate between types of conduct, (2) the number of acts with sufficient certainty to support the number of counts, and (3) the general time period to assure the acts were committed within the applicable statute of limitations. (*Id*. at p. 316.) "Where alibi is not a defense, the prosecution need only prove the act was committed before the filing of the information and within the period of the statute of limitations. [Citation.] This is so because the precise time of a crime need not be declared in the accusatory pleading except where time is a material ingredient of the offense. [Citation.] Time is essential if the defense is alibi." (*People v. Obremski* (1989) 207 Cal.App.3d 1346, 1354.) In *Obremski*, the defendant was charged with 26 sex crimes and the jury found him guilty of 25. (*Id*. at p. 1348.) The crimes were committed against his stepdaughter starting when she was 12 for five years when they were living together. (*Id*. at pp. 1348-1349.) During this period, they "had sexual intercourse at least once a week and as often as three times a day." (*Id*. at p. 1349.) "Appellant's defense was (1) he was physically incapable of having sex and (2) [the victim's] testimony was not credible." (*Id*. at p. 1350.) The appellate court affirmed the convictions, reasoning: "Since the exact times of the offenses are not material in the case before us, in that appellant did not attempt to prove an alibi and had uninterrupted access to the victim, the imprecise charges did not mislead him and violate his right to due process." (*Id*. at p. 1354.)

With these points in mind, we turn to the counts that defendant has alleged lack sufficient evidence.

7

## A

### *Counts 2 And 3*

Count 2 and count 3 were lewd acts on a child under 14, alleged to have occurred "[o]n or about and between" July 7, 2003 and September 6, 2003 and September 7, 2003, and November 6, 2003, respectively. The following was evidence of count 2: The first vaginal touching was at the first Casselman house. Defendant touched the skin of her legs, "boobs," and "private parts." The family moved to the first Casselman house on May 1, 2003 and lived there until July 1, 2005, at which time they moved four houses down to another house on that drive. The following evidence supported count 3: The victim told the interviewer that defendant "raped" her a "couple of weeks later," and defined rape as "t[a]k[ing] my virginity away." Similarly, defendant told Detective Angle the first vaginal intercourse happened at the first Casselman house, which he thought occurred a month after the first sexual contact.

## B

### *Counts 5 Through 12*

Count 5 alleged a lewd act "[o]n or about and between January 7, 2004 and March 6, 2004." Defendant admitted to Detective Angle he started molesting the victim when she was six or seven years old and he "did it for a little bit." He would "take [his] penis out . . . [and] just rub it a little bit" "around her . . . vagina." During the time period alleged in count 5, the victim was seven years old.

Count 6 alleged a lewd act "[o]n or about and between March 7, 2004 and April 30, 2004." The victim was still seven years old. Defendant admitted to Detective Angle that he rubbed his penis around the victim's vagina more than once, i.e., he would get "possessed again . . . and then it would happen again -- same thing."

Count 7 alleged a lewd act "[o]n or about and between May 1, 2004 and July 7, 2004." Defendant admitted to Detective Angle that he stuck his finger in the victim's anus once and then stopped, when the victim was eight years old. By May 1, 2004, the victim had turned eight.

Count 8 alleged a lewd act "[o]n or about and between July 8, 2004 and September 7, 2004." The victim told the interviewer defendant made her "grab his dick and then go up and down on it" and that it happened at the first Casselman house (in addition to happening at the second one). They lived at the first house from May 1, 2003 through July 1, 2005.

Count 9 alleged a lewd act "[o]n or about and between September 8, 2004 and November 7, 2004." The victim told the interviewer defendant "put his fingers in [her] vagina and then rape[d] [her] there." Defendant admitted to Detective Angle he did that to her once when she was eight years old. During the time period alleged in this count, the victim was eight years old.

Count 10 alleged a lewd act "[o]n or about and between November 8, 2004 and January 7, 2005." This count is supported by evidence defendant touched the victim's private parts outside her clothing while playing hide and seek "once in awhile" at the first Casselman house. Similarly, one of the victim's other brothers (Chun) testified they all played hide and seek "[a]bout five times . . . over six or seven months." The family lived at the first Casselman house until July 1, 2005.

Count 11 alleged a lewd act "[o]n or about and between January 8, 2005 and March 7, 2005." The victim told the interviewer when she was eight years old, defendant woke her up, told her to go into the bathroom, and then "[t]old [her] to put [her] hands on the toilet and . . . [h]e pulled [her] pants down and then he stuck his wiener into [her] butthole." The victim was eight years old at the time frame alleged. She thought this was the first time defendant sodomized her.

9

Count 12 alleged a lewd act "[o]n or about and between March 8, 2005 and April 30, 2005." The victim told the interviewer he would sodomize her "[l]ike every other day or twice a week" or "just like whenever he felt like doing it." Based on this evidence, the jury could have found defendant sodomized her the few weeks following the first incident.

## C

### Counts 14 Through 36

Count 14 and beyond alleged conduct during the time the family lived at the second Casselman house, as those counts occurred "[o]n or about and between" July 9, 2005 and beyond, and the family moved to the second house on July 1, 2005.

Count 14 alleged a lewd act "[o]n or about and between July 9, 2005, and September 8, 2005." The victim told the interviewer defendant "raped [her] in [her] butt" when she and Chun slept in the living room.[1] She explained he would do that "every other night" because it was "a[n] easy way for him to come 'cause . . . we didn't have any doors there so he can just come and then he would rape me right there and then - and then he'll go back inside his room."

---

[1] The victim told the interviewer she and Chun slept in the living room of the second Casselman house until their brothers Ny and Danny moved out. When they slept in the living room, the victim slept on a twin bed and Chun slept on a couch. Once Ny and Danny moved out, the victim and Chun moved into their bedroom and their mother bought a bunk bed for the victim and Chun. According to Dong, Ny moved out of the second Casselman home and into an apartment in Natomas with her in January 2008.

The victim's statement that defendant raped her "every other night" also supported defendant's convictions for lewd acts or sexual penetration alleged in counts 15 through 22 and counts 25 and 28, since those counts all occurred on or before January 2008 when Ny moved out and Chun and the victim got the bedroom and a bunk bed.[2]

Counts 23 and 24 alleged defendant engaged in two acts of sexual penetration with a child 10 years old or younger "[o]n or about and between" January 10, 2007 to March 9, 2007 and March 10, 2007 to April 30, 2007. The victim was 10 years old during these time frames. The victim told the interviewer that while at the second Casselman house, defendant would touch her "always with his hands. Like he would actually like mess - like put his fingers in my vagina and then rape me there. And then he would sometimes rape me in the butt. It was always switching off. And then sometimes he would want to like rape me from my vagina. It was just like always on and off, like different times." When the interviewer asked her how many times defendant had put his fingers in her vagina, she said, "I don't know, a couple times."[3]

---

[2] Count 15 alleged a lewd act "[o]n or about and between September 9, 2005 and November 8, 2005." Count 16 alleged a lewd act "[o]n or about and between November 9, 2005 and January 8, 2006." Count 17 alleged a lewd act "[o]n or about and between January 9, 2006 and March 8, 2006." Count 18 alleged a lewd act "[o]n or about and between March 9, 2006 and April 30, 2006." Count 19 alleged a lewd act "[o]n or about and between May 1, 2006 and July 9, 2006." Count 20 alleged a lewd act "[o]n or about and between July 10, 2006 and September 19, 2006." Count 21 alleged a sexual penetration "[o]n or about and between September 20, 2006 and November 9, 2006." Count 22 alleged a sexual penetration "[o]n or about and between November 10, 2006 and January 9, 2007." Count 25 alleged a lewd act "[o]n or about and between May 1, 2007 and July 10, 2007." Count 26 alleged a lewd act "[o]n or about and between July 11, 2007 and September 10, 2007." Count 27 alleged a lewd act "[o]n or about and between September 11, 2007 and November 10, 2007." And Count 28 alleged a lewd act "[o]n or about and between November 11, 2007 and January 10, 2008."

[3] In part III of the Discussion, we will explain that although the evidence was sufficient to support counts 23 and 24, there was instructional error associated with these

11

Counts 29 through 31 and counts 33 through 35 alleged more lewd acts. Count 29 alleged a lewd act "[o]n or about and between January 11, 2008 and March 10, 2008." Count 30 alleged a lewd act "[o]n or about and between March 11, 2008 and April 30, 2008." Count 31 alleged a lewd act "[o]n or about and between May 1, 2008 and July 11, 2008." Count 33 alleged a lewd act "[o]n or about and between September 12, 2008 and November 11, 2008." Count 34 alleged a lewd act "[o]n or about and between November 12, 2008 and January 11, 2009." And count 35 alleged a lewd act "[o]n or about and between" January 12, 2009 and March 11, 2009. The victim told the interviewer that when she and Chun shared a room, defendant "would always come in the room every night - not every night but every time he wanted to touch me" and then "he would try to touch me and then he would rape me and . . . I was just scared." Chun testified defendant came into his and the victim's room around midnight "once every few months." As noted, the victim and Chun shared a bedroom at the second Casselman home after Ny moved out, which was January 2008.

Count 32 alleged defendant committed a lewd act "[o]n or about and between July 12, 2008 and September 11, 2008." The victim told the interviewer that when they were at the second Casselman house, defendant "pulled [her] underwear down and pulled his pants and [then] started raping [her]" with "his wiener" in "[h]er . . . butthole." It was during the summer when she was going into sixth grade, which would have made it the summer of 2005 when she was 11. However, the jury could have found, based on other evidence, the crime took place in the summer of 2008, because the victim also told the interviewer the incident took place at a time when Chun had a room, which would have been after January 2008, when she and Chun took over Danny and Ny's room.

counts that was not harmless beyond a reasonable doubt, requiring reversal of these counts.

12

Count 36 alleged defendant committed a lewd act "[o]n or about and between March 12, 2009 and April 30, 2009." The victim told the interviewer defendant came into the room she shared with Chun, "was touching [her]," "noticed there was blood so he went out the room and . . . that's the last time." The victim started menstruating when she was 12. Since the victim was born in May 1996, she was 12 during the alleged time frame.

On this record, sufficient evidence supported the verdicts.

### III

*The Court Erred In Its Instructions Regarding Counts 21 Through 24,*

*And The Error Was Prejudicial As To Counts 23 And 24*

Defendant contends his convictions for counts 21 through 24 for sexual penetration must be reversed because the trial court did not instruct the jury that it was required to find that the offenses took place on or after the effective date of Penal Code section 288.7, which was September 20, 2006. (Stats. 2006, ch. 337, § 9 [Sen. Bill 1128].) Penal Code section 288.7, subdivision (b) increased the punishment for sexual penetration from three, six, or eight years to 15 years to life in prison. (Cf. Pen. Code, § 288.7, subd. (b) ["Any person 18 years of age or older who engages in . . . sexual penetration . . . with a child who is 10 years of age or younger . . . shall be punished by imprisonment in the state prison for a term of 15 years to life"] with Pen. Code, § 289, subd. (j) ["Any person who participates in an act of sexual penetration with another person who is under 14 years of age and who is more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years]".) We agree there was instructional error and find that the error was prejudicial as to counts 23 and 24.

# A

## *The Court's Error*

Count 21 alleged a sexual penetration "[o]n or about and between September 20, 2006 and November 9, 2006."

Count 22 alleged a sexual penetration "[o]n or about and between November 10, 2006, and January 9, 2007."

Counts 23 alleged a sexual penetration "[o]n or about and between January 10, 2007 to March 9, 2007."

Count 24 alleged a sexual penetration "[o]n or about and between March 10, 2007 and April 30, 2007."

The court instructed the jury pursuant to CALCRIM No. 207 as follows: "It is alleged that the crimes occurred on various dates. The People are not required to prove that the crime took place exactly on that day, but only that it happened reasonably close to that day."

During deliberations, the jury asked the following question: "No dates are specifically mentioned in the instructions to the jury, only on the charges. The text of 288.7(a) and 288.7(b) charge that the defendant had intercourse with or penetrated a person under the age of 10. However, no dates are mentioned in the text of the penal code. [¶] Are we supposed to convict the defendant for breaking the penal code, or only for breaking the penal code reasonably close to the dates the charges cover?"

The court responded as follows:

"The defendant is charged in each count with committing the alleged crime '[o]n or about and between' a specified date and time. I have provided you with a chart that lists the particular time period associated with each count.

14

"The People have presented evidence of more than one act to prove that the defendant committed the crimes during the period alleged.  You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of the acts during the period alleged and you all agree on which act he committed."

The court then recited the offense dates alleged as to counts 21 through 24.  The court then stated, "In order to convict the defendant of any of these crimes, the prosecution must prove that the defendant committed the charged crime on or about and between the dates specified for that particular count."

As the People concede, the court's instruction was error because ex post facto principles prohibit a conviction for these crimes unless they occurred on or after the effective date of the statute, which was September 20, 2006.  (See *Collins v. Youngblood* (1990) 497 U.S. 37, 42 [111 L.Ed.2d 30, 39] [" 'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute . . . which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto'* "].)

B

*The Court's Error Was Harmless Beyond A Reasonable Doubt As To Counts 21 And 22, But It Was Prejudicial As To Counts 23 And 24*

An ex post facto violation is reviewed to determine whether the violation is harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].  (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 261.)

15

### 1

#### *Counts 21 And Counts 22*

Count 21 alleged a sexual penetration "[o]n or about and between September 20, 2006 and November 9, 2006," and count 22 alleged a sexual penetration "[o]n or about and between November 10, 2006, and January 9, 2007."

The victim told the interviewer that defendant "raped [her] in [her] butt" when she and Chun slept in the living room in the second Casselman house, which was from July 1, 2005 (when the family first moved to the second Casselman house) to January 2008 (when Ny moved out and Chun and the victim got his bedroom). Based on the jury's verdict finding defendant guilty on all counts, it is clear the jury believed the victim's testimony and not defendant's. Based on her testimony that defendant "raped [her] in [her] butt" "every other night" (that would have encompassed the charged dates), we find the error in failing to instruct the jury it had to find the conduct occurred on or after September 20, 2006, harmless.

### 2

#### *Counts 23 And 24*

Counts 23 alleged a sexual penetration "[o]n or about and between January 10, 2007 to March 9, 2007." Count 24 alleged a sexual penetration "[o]n or about and between March 10, 2007 and April 30, 2007." The victim was 10 years old during these time frames. And this was during the time the family was in the second Casselman house. The victim told the interviewer that defendant would touch her "always with his hands. Like he would actually like mess - like put his fingers in my vagina and then rape me there. And then he would sometimes rape me in the butt. It was always switching off. And then sometimes he would want to like rape me from my vagina. It was just like always on and off, like different times." However, when the interviewer asked her how many times defendant had put his fingers in her vagina, she said, "I don't know, a couple times." The People argue the error was harmless.

16

However, because the evidence left open the possibility that defendant digitally penetrated the victim only twice (unlike every other day with counts 21 and 22) over a long time period (from July 1, 2005 during the time she lived at the second Casselman house to the time Danny and Ny moved out, which was January 2008), some of which predated the effective date of the statute, we cannot declare the instructional error was harmless beyond a reasonable doubt. As the jury question disclosed, the jury was having trouble determining when the charged penetrations occurred. "Since the jury was not asked to make findings on the time frame within which the offenses were committed, the verdicts cannot be deemed sufficient to establish the date of the offenses unless the evidence leaves no reasonable doubt that the underlying charges pertained to events occurring on or after [the statute's effective date]. [Citation.] It would be inappropriate for us to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date. [Defendant] has a constitutional right to be sentenced under the terms of the laws in effect when he committed his offenses. For a court to hypothesize which acts the jury may have based its verdicts on, or what dates might be attached to certain acts based on ambiguous evidence, would amount to 'judicial impingement upon the traditional role of the jury.' " (*People v. Hiscox*, *supra*, 136 Cal.App.4th at p. 261.) Here, as we have noted, the evidence was ambiguous as to how many of these penetrations occurred and also when they occurred and it is not for us to decide on which acts the jury based its verdict.

We then turn to the remedy. The problem here was instructional error -- the court failed to instruct the jury that it must find the conduct occurred on or after September 20, 2006. But, as we discussed in part II, there was substantial evidence defendant committed at least two acts of sexual penetration that could have occurred within the time frame. Because there was sufficient evidence to support these counts, the trial court's erroneous instruction does not bar retrial of these counts, if the People so choose. (*People v. Hallock* (1989) 208 Cal.App.3d 595, 607 [If there is sufficient evidence to

17

convict defendant of the crime but reversal is predicated on instructional error, "double jeopardy principles do not come into play"].)

IV

*Defendant Has Failed To Establish He Was Shackled During Trial*

Defendant contends the trial court erred in shackling him "during trial without justification." As we explain, defendant has not established the preliminary fact that he was shackled during trial.

"Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) The only indication in the record that defendant was in fact shackled at all (let alone during trial) was that the court gave CALCRIM No. 204 which stated, "The fact that physical restraints have been placed on the defendant is not evidence. Do not speculate about the reason. You must completely disregard this circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations." Defendant has not cited to, and we have not found, any indication he was shackled during trial, such as a shackling order, a motion to shackle or unshackle defendant, or any reference to defendant being physically restrained in court.

What we have found is reference to defendant being remanded to the sheriff's custody at the end of trial each day. It is plausible the court gave the shackling instruction to inform jurors not to draw any adverse inferences if they saw defendant being transported to and from the court in restraints. "The customary practice of utilizing physical restraints while transporting a prisoner from place to place, e.g., from jail to courtroom and back, is a matter of common knowledge and generally acknowledged as acceptable for the protection of both the public and defendant. It has, in fact, been established that it is legally permissible to transport a prisoner to the courtroom in physical restraints." (*People v. Jacobs* (1989) 210 Cal.App.3d 1135, 1141.)

18

Thus, given defendant's failure to establish the preliminary fact that he was shackled during trial, we reject defendant's claim of error.

DISPOSITION

Counts 23 and 24 are reversed and the case is remanded to the trial court for proceedings consistent with this opinion.  In all other respects, defendant's convictions are affirmed.


                                        ROBIE          , J.



We concur:



        HULL        , Acting P. J.



        MAURO        , J.


19